STATE OF IOWA, Appellee, v. FLOYD HIXSON, Appellant.

No. 39661.

OCTOBER 15, 1929.

*Ralph H. Munro,* for appellant.

*John Fletcher,* Attorney-general, and *Neill Garrett,* Assistant Attorney-general, for appellee.

DE GRAFF, J.—This is the third time that this cause has been before this court on appeal. The prior decisions are found in 202 Iowa 431 and 205 Iowa 1321. We deem it unnecessary to reiterate the facts, as they are sufficiently recited in the foregoing decisions. The opinion in *State v. Hixson,* 202 Iowa 431, contains this statement: "The fraud perpetrated on Singleton was gross."

In the instant case, there is no challenge to the indictment or the instructions, nor is the question of the sufficiency of the evidence to sustain the verdict presented by the appellant. The propositions outlined and argued by the appellant involve certain rulings on the admission of evidence. We will dispose of these points *seriatim.*

1. The first contention of appellant is that a certain letter known as Exhibit P-32 and the inclosing envelope, Exhibit P-33, were incompetent, and therefore inadmissible. Clearly, this

contention has no basis, under the record facts. It is conclusively shown that the letter was received in due course of mail. It was sent to one Ed Garfield, under the directions of Gray, to Hixson. Gray, who was a witness for the State, testified that he recognized the letter "as having come from the defendant Hixson," and that he received the letter "on or about the date the letter is dated." He further testified:

"He [Hixson], whose name was on both the letter and the envelope, knew that I [Gray] came from Richland,—just came back from there."

It may be said, by way of further explanation, that the letter had the caption printed at the top thereof, "Floyd Hixson, Real Estate, Richland, Iowa, 2-22-1925." The salutation therein is, "Dear friend Roy." The subject-matter of the letter had reference to deals in real estate, including the property under consideration, to wit, Pleasant Plain property. It cannot be questioned that the letter came to Gray in due course of mail, using Ed Garfield as the conduit to accomplish the purpose and arrangement as agreed upon between Gray and Hixson. Gray was one of the parties who acted with Hixson in perpetrating the alleged fraud, and was subsequently convicted for the offense, and in due course "of train," was delivered to the state penitentiary. Gray, who was a witness on the former trial of this case, and by a certified transcript was a witness on the instant trial, explained the entire matter relative to this letter. Gray testified:

"I told him [Hixson] to write to Ed Garfield to leave my name off. He is the man I was renting rooms of. I said to him [Hixson] I would get it all right. The people at Pleasant Plain thought I was from Rock Island, and they would wonder why my letters would be addressed to Galesburg, if I lived at Rock Island."

All of this testimony went in without objection on the first trial. Counsel for the defendant examined the witness Gray before the letter was introduced, and he elicited the reply that Garfield had delivered the letter to him, and further explained that the return on the envelope contained the name and address

of Floyd Hixson, and that was the reason why Garfield turned the letter over to him.

It thus appears without dispute that the letter was sent in accordance with the directions of the receiver thereof, and there can be no question, under the facts and circumstances of this case, that Hixson was the author of the letter. His name was attached to the letter. Authorship of the letter can be established by either direct or circumstantial evidence, and the circumstances show that Hixson was the author, even in the absence of proof on the question of handwriting. See *Davis' Sons v. Robinson,* 67 Iowa 355. In the instant case, a letter was received by Gray in the due course of mail, under the specific direction of Gray to Hixson, which letter referred to the subject-matter of which both Gray and Hixson had peculiar knowledge. The letter related to the subject of the present controversy, and it was in answer to a conversation had between Gray and Hixson. Under the undisputed facts, the trial court did not err in the admission of the exhibits in question.

2. The next matter of complaint is directed to the cross-examination of one Meacham, a character witness called by the defendant. This witness lived in the vicinity of Hixson's resi-dence, and had known him for a number of years. In answer to one question, he stated that he was acquainted with his reputation for moral character in the vicinity, and that it was good. Upon cross-examination, it is quite apparent that witness Meacham did not understand the distinction between "character" and "reputation." The trial court finally instructed the witness that the question was, what he understood "reputation" to mean. Upon further cross-examination by the prosecuting attorney, this question was asked:

"Now, just a minute, Mr. Meacham, you did hear of him [Hixson] skinning old man Singleton there at Pleasant Plain?"

Thereupon counsel for the defendant objected, and the objection was sustained, and the jury was then and there admonished that reputation was confined to what it may have been prior to the deal involved in this case. There appear to have been further quarreling and dispute between the prosecuting attorney and the counsel for the defendant. Thereupon the court

admonished respective counsel, and told them that they knew what was proper, and admonished the jurors to pay no attention to the wrangling and quarreling between respective counsel; that it constituted no part of the trial; and that the jury should follow the ruling of the court. Among other things, the court especially admonished the jury in these words:

"Whatever may have transpired since the alleged deal with Singleton, as bearing upon this man's [Hixson's] reputation, is incompetent. It is only what his character was—or general reputation for general moral character was—before this alleged fraud, if it was consummated, that is competent for your consideration at this time. Proceed, gentlemen."

The prosecutor, a little later, in an attempt to impeach the witness Meacham, asked him whether he was then in bankruptcy. The witness answered that he was not. Defendant's counsel then objected to this line of examination, and the objection was sustained. It is apparent that the witness then started a quarrel with the prosecutor, who then asked the witness whether he had filed a petition in bankruptcy, and the witness answered: "I am not in bankruptcy. I have been discharged, if you want to know it. You better keep up with the times." Counsel for the defendant then entered an objection to these statements, and requested the court to admonish the jury. After that, witness Meacham volunteered the following: "I am not in bankruptcy, if you want to know it." The trial court then admonished the jury as follows:

"Members of the jury, it is immaterial whether this witness is in bankruptcy or not. That has nothing whatever to do with this case. So you will pay no attention to whether or not he is in bankruptcy."

In the light of this record, clearly, there was no prejudicial error in this particular. The trial court ruled correctly on these irrelevant matters, and the jury was squarely and in no uncertain language told that this matter which was the subject of quarrel between the respective counsel had nothing to do with the case. There can be no doubt that counsel for the State had a right to find out what this witness meant by "reputation," and what he meant by "good moral character." He had a right

1238

to establish, by definition from the witness himself, whether or not the witness had a proper understanding of the terms used and embodied in the questions on his direct examination. It was the legal privilege of counsel to disqualify the witness, if possible, to express an opinion on the matter which was the subject of inquiry. In brief, it is always competent to find out whether a witness knows what he is talking about. We hold, therefore, in view of the record in this regard, that the trial court did not err.

3. It is further complained that the county attorney was guilty of misconduct in his argument to the jury. The defendant is not in a position to establish his contention by the filing of affidavits, which he did attach to his motion for new trial. Alleged misconduct of an attorney in argument, not made of record on the trial, cannot be made the basis of review in this court, when the only evidence of such misconduct is in the form of affidavits attached to the motion for new trial. See *Hornish v. Overton*, 206 Iowa 780, 1. c. 785.

4. Lastly, appellant challenges the judgment entered as excessive. This contention is of no avail. The defendant was sentenced under the Indeterminate Sentence Law. The period of time which the defendant will serve in the penitentiary is dependent upon the subsequent action taken by the board of parole. See *State v. Korth*, 204 Iowa 667; *State v. Bird*, 207 Iowa 212; *Haley v. Hollowell*, 208 Iowa 1205.

The judgment entered by the trial court is—*Affirmed.*

ALBERT, C. J., and STEVENS, FAVILLE, and MORLING, JJ., concur.