## ADAMS v. COMMONWEALTH.

Court of Appeals of Kentucky.

Dec. 18, 1953.

William C. Kibbey, Sam F. Kibbey and Kibbey & Kibbey, Grayson, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Dorwin (Dobbin) Adams was indicted by the grand jury of. Carter County for the offense of maliciously shooting and wounding Earl Stevens, Jr., with intent to kill. Sec. 435.170(1). The trial resulted in a verdict of guilty and a sentence of 21 years.

He appeals, urging the following grounds for reversal: (1) the verdict was so against the weight of the evidence as to indicate passion and prejudice upon the part of the jury; (2) the argument of employed counsel was reversibly prejudicial; and (3) the instructions were erroneous in that the court failed to instruct the jury on the whole law of the case.

There is a wide variance between the Commonwealth's proof and that of appellant as to what transpired in this case. According to the Commonwealth's version, substantiated by several witnesses, Earl Stevens, Jr., a taxicab operator in Olive Hill, at about 11:30 p. m. on October 3, 1952, was transporting a passenger, Glen Arnold Brown, to the latter's home in that city. On the way, Stevens and Brown had stopped and were giving road directions to some Negroes, when appellant approached them, got in the cab, and requested to be driven to the police station. In conformity with his wish, they proceeded to the police station where appellant got out, went inside, came back to the cab after a few minutes and asked to be driven out the road. When they reached a graveyard near the home and garage of one Raymond Waggoner appellant drew a pistol on them, handcuffed them and marched them to Waggoner's residence. They entered the dwelling and appellant left them in order to phone John Dickerson, the chief of police of Olive Hill. When appellant returned from the room in the rear of the house where the telephone was located, he asked Stevens and Brown to go outside, which they refused to do. He then pushed them to the floor and while they were in this position shot Stevens in the neck, the bullet going on and striking Brown in the leg.

Waggoner testified he heard a knock on his door and someone called and said to him, "Raymond, get up and let us in. A man here is going to kill us." He opened the door, turned on the light and saw Stevens and Brown handcuffed, with Adams standing behind them holding a gun to their backs. Stevens told the witness he wanted to use the telephone to call his father and appellant said he wanted to use the same to call John Dickerson, chief of police. Both men then went to the telephone in a rear room. Stevens and Brown begged Waggoner to do something for them, telling him that appellant was going to kill them, but Waggoner merely chided them, thinking their fears unfounded. When he had completed his call, appellant

started pushing his prisoners out of the room and they fell to the floor, whereupon he shot Stevens as he stood over both of them with a pistol. Waggoner said that neither Stevens nor Brown attempted to strike or attack Adams, who seemed to be angry. There was evidence tending to show that appellant was intoxicated on this occasion.

Appellant testified that when he approached the cab to be taken home, Brown struck him with a bottle. He had arrested Brown about a week prior thereto for drunkenness. He then made the two men get in the cab for the purpose of taking them to the police station. As they approached the station, Brown pinned him against the door and Stevens drove on past it, with the remark, "No, I ain't stopping at no police station. We will learn you not to dip in our business no more." They took him on to the graveyard. He had in the meantime freed his arms to where he could get to his pistol, which he drew on them, saying, "Stop it." They complied, they got out of the cab and he started them toward Waggoner's home in order that he might phone John Dickerson, the chief of police, to come after them. As they were walking up the road Brown and Stevens attempted to maneuver their positions so as to get appellant between them. To avoid this, appellant handcuffed them. They then proceeded to Waggoner's residence, where appellant secured permission to phone Dickerson. When he returned to them after phoning, someone said, "Get him," and he was struck on the back of his head, the blow staggering him. All three went down together on top of appellant's pistol which had fallen on the floor. While they were all struggling on the floor, appellant grabbed hold of the pistol, and this weapon was either "knocked off" or it "went off" in the scuffle on the floor, with the result that Stevens was wounded. Appellant introduced affidavits in an attempt to prove not only that he was sober at the time but also that Stevens had made threats against him the same night.

■■. We have no doubt, from the testimony just recited, that there was ample evidence to support the verdict. Nor does the penalty imposed upon appellant, in our opinion, indicate passion and prejudice on the part of the jury. If the testimony of the Commonwealth witnesses was accepted as true, as it must have been, then there certainly were no mitigating circumstances in appellant's favor which might have induced a fair-minded jury to give anything other than the maximum sentence allowed.

■■ Special counsel was employed to conduct the prosecution of appellant and the next error assigned for reversal concerns statements, alleged to have been prejudicial to appellant's substantial rights, made by this counsel in his closing argument. The first remark complained of pertains to an attempted act which had been prohibited by the lower court during the trial. At that time the Commonwealth sought to have Brown, whom, as we have noted, appellant took into custody along with the prosecuting witness, exhibit his paralyzed right arm to the jury. Appellant's objection to this procedure was sustained by the court. Nevertheless, in his argument counsel referred to this excluded evidence by saying:

"Do you have any doubt but what the right arm of this Brown boy was paralyzed or incapable of being lifted? You have any doubt about that? He testified to that, didn't he? He swore that and in addition to that *we asked him to take his sweater off and show this jury and they objected.*" (The italics are ours.)

Although appellant objected to this language, his objection was overruled and an exception was reserved. The condition of Brown's arm, which had been crippled by service during the war, had no place in the trial. We are at a loss to understand why this damaging utterance was permitted in view of the fact that the court had forbidden Brown to take his sweater off during the trial. Not only was it improper for counsel to refer to evidence which had pre-

viously been declared incompetent but it was inexcusable for him to call the jury's attention to the objection which appellant had made in order to have the evidence excluded. This conduct of counsel was unquestionably prejudicial under the circumstances. See Nolan v. Commonwealth, 261 Ky. 384, 87 S.W.2d 946.

Somewhat tied on to the above statement was the following observation of counsel made over the objection and exception of appellant: "My God, you hear of those things, and hear of things like that happening in Russia, where they handcuff people and shoot them in the back." His words in this respect, while perhaps not actually so intended, undoubtedly had a tendency to inflame the minds of the jury against appellant and thus were improper and the court should have sustained appellant's objection to this remark.

Finally, near the close of his argument, counsel added: "Give him twenty-one years, and he is out in six." Appellant's objection to this statement was overruled, to which he excepted. However, at the close of the argument, the court, on its own motion, gave the following charge to the jury: "The statement, give a man 21 years and he would be out in six, you will not consider that except insofar as it meant he would be eligible for parole in that time."

This ruling of the court, strictly speaking, cannot be construed as an admonition, because the jury was never told to disregard the remark. More than that, the overruling of appellant's objection to the statement during the trial had the effect of placing the court's stamp of approval on it in the minds of the jury and the later charge with reference to it during the argument served only to impress it more firmly upon their minds and to incline them to the belief that it was a proper line of argument.

Ordinarily, each type of comment we have referred to and elaborated upon, standing alone, would not constitute reversible error. Especially would this be true where a timely objection is sustained and a proper admonition is given in each

instance. In this case we have a combination, a pyramiding of highly improper statements, all drawn from outside the record, and the court erroneously overruled the objection of appellant to each statement. The effect of all this was calculated to produce a prejudicial result at the hands of the jury. Therefore, for the reasons indicated, the judgment must be reversed because of the misconduct of counsel for the Commonwealth in his argument before the jury. We do not think this holding is inconsistent on the same point with that in Powell v. Commonwealth, 276 Ky. 234, 123 S.W.2d 279, relied upon by the Commonwealth as controlling the issue under discussion, because the facts and circumstances in the case at bar transcend the saving features set out in that opinion.

Our decision on the point just discussed renders it unnecessary for us to consider appellant's other ground for reversal.

Wherefore, the judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.