STATE OF IOWA, appellee, v. DANIEL LEE CUPPLES, appellant.

No. 52465.

(*Reported in 152 N.W.2d 277*)

July 11, 1967.

Clarke A. Pasley, of Ames, for appellant.

Richard C. Turner, Attorney General, David A. Elderkin, Assistant Attorney General, and Charles Vanderbur, of Ames, County Attorney, for appellee.

Moore, J.—The sole question presented by this appeal is whether the trial court abused the discretion vested in it by Code section 718.1, subsection 9, which provides one convicted of forgery "shall be imprisoned in the penitentiary not more than ten years or imprisoned in the county jail not exceeding one year, or fined not exceeding one thousand dollars." Following defendant's plea of guilty of forgery and a presentence investigation the trial court sentenced him to a term not exceeding ten years in the men's reformatory at Anamosa and included in the order a recommendation defendant receive a parole at the

earliest possible date. Defendant does not attack any of the proceedings in the lower court and does not deny his guilt. He challenges only the severity of the punishment imposed by the sentence and asks us to modify it or remand his case to the trial court for resentencing.

Defendant with four other young men and two young women during the summer of 1966 carried on a series of forgeries and uttering of forged checks in central and eastern Iowa. They thereby obtained money and merchandise totaling approximately seven thousand dollars. Their operation included cashing checks of less than $20 each in Altoona, Ames, Boone, Davenport, Des Moines, Marshalltown, Oskaloosa and Ottumwa.

On August 15, 1966, defendant, Marjorie Jane Long, Jerry Robson and two others of juvenile age went to Ames where a pad of blank checks was picked up at the First National Bank. Miss Long wrote several forged checks and made them payable to Terry Colwell. Each was for $18.75. Terry Colwell was known to defendant. When necessary, Colwell's driver's license was used by the person cashing a check under an arrangement that Colwell would claim he had lost his driver's license if questioned by the police.

Defendant on August 15 cashed five of the checks written by Miss Long on which he endorsed Colwell's name and obtained cash and merchandise at business establishments in Ames. The proceeds were divided between the parties to the scheme.

On September 7, 1966, defendant was arrested at his home in Newton under a charge of forgery. He was taken to Ames, arraigned in Ames Municipal Court with counsel, waived preliminary hearing and was bound over to the Story County Grand Jury.

Thereafter defendant freely and voluntarily admitted his check activities as described above. He told the investigating police officers he thought if caught he would only be required to pay the checks. He was unaware of the forgery law. At all times after his arrest he admitted his transgressions and made no attempt to conceal the facts.

On September 16, 1966, a County Attorney's Information was filed against defendant, Daniel Lee Cupples, charging him

with forgery. A like charge was also filed against Marjorie Jane Long and Jerry Robson. They were represented by different attorneys.

On arraignment defendant entered a plea of guilty. His able counsel in a strong plea for leniency advised the court defendant was 18 years of age, single, living with his parents at Newton, a 1966 high school graduate and engaged to be married in the spring of 1967. During high school he had worked at a junkyard. After graduation he worked at Maytag as an inspector and was earning $440 per month until his discharge after being arrested. Defendant had no pressing need for money and was unable to explain why he became involved in the check writing. Defendant claimed he had received only approximately $200 from all the checks. Counsel acknowledged investigation of the check scheme was continuing and was unable to say what disposition would be made in other counties. Story was the first county to break the case. Counsel advised the court defendant had a juvenile court record.

The trial court stated he did not know what to do with defendant and directed the parole officer to make a presentence investigation of defendant, Miss Long and Robson. The latter two had also entered guilty pleas that day.

On September 28, 1966, after receiving the presentence investigation report the court reconvened the sentencing hearing.

The presentence investigation report by a parole agent contained the information which defendant's attorney had related earlier and showed defendant had been in trouble with the law since he was nine years of age. He had been arrested for throwing rocks at trains, putting rocks on the tracks, stealing a bicycle, damaging laundry machines, investigation of larceny, auto theft, reckless driving, operating a motor vehicle while license under suspension and speeding.

Defendant came from a good family consisting of his parents, three brothers and two sisters. His high school record was not good but he took vocational training during his senior year and graduated although near the bottom of his class. The report stated defendant was very remorseful and wanted to make amends.

Before pronouncing sentence the trial court said: " I want to tell you that the Court is in a very difficult position. I am trying to do what is right in these three cases. I have had a pre-sentencing investigation and I know that the only thing I can do is to pass sentence this morning."

Later the court asked defendant if he had anything to say to which defendant responded he would like to have another chance. The court then said: "I would like to give you another chance and it almost breaks my heart to have to pronounce sentence on you young people, but if I should give you another chance these other counties won't. * * * I am going to have to treat all of you the same. It is going to be your sentence, under the statute, not to exceed ten years at Anamosa. I am going to recommend you be given a very, very early parole, which could be as little as one year."

I. Code section 789.15 provides: "Discretion as to sentence. Where one is convicted of a felony that is punishable by imprisonment in the penitentiary, or by fine, or by imprisonment in the county jail, or both, the court may impose the lighter sentence if it shall so elect."

Code section 789.13 provides: "Indeterminate sentences. When any person over sixteen years of age is convicted of a felony, except treason or murder or any crime the maximum penalty for which is life imprisonment, the court imposing a sentence of confinement in the penitentiary, men's or women's reformatory shall not fix the limit or duration of the same, but the term of such imprisonment shall not exceed the maximum term provided by law for the crime of which the prisoner was convicted."

[1] Thus it is clear that after exercising the discretion of sentencing defendant to the reformatory rather than imposing a lighter sentence the time to be served by defendant is for the determination of the parole board. State v. Hixson, 208 Iowa 1233, 1238, 227 N.W. 166, 168; State v. Albertson, 237 Iowa 1148, 1155, 24 N.W.2d 395, 399; State v. Kulish, 260 Iowa 138, 145, 148 N.W.2d 428, 433.

II. Whether to fine or sentence defendant to jail rather than committing him to the reformatory was addressed to the

sound discretion of the trial court as was the question of a bench parole.

We have pointed out many times the trial court is ordinarily in better position than we to determine what sentence should be imposed. State v. Olander, 193 Iowa 1379, 1383, 186 N.W. 53, 55, 29 A. L. R. 306, and citations; State v. McCollom, 260 Iowa 977, 151 N.W.2d 519, and citations.

In State v. Kramer, 252 Iowa 916, 921, 922, 109 N.W.2d 18, 21, we say: "The trial court had these matters before it, and we must assume took all the facts developed in the course of the trial and the entire picture presented into consideration in fixing the sentence. Each case must be decided upon its peculiar facts and there is no hard and fast rule by which the punishment of those convicted of crimes must be determined within the limits of the governing statutes."

It was the duty of the trial court to ascertain any and all facts that would assist in the proper exercise of its discretion in fixing defendant's sentence, whether in or out of the record. State v. Myers, 241 Iowa 670, 672, 42 N.W.2d 79, 80; State v. Dalton, 254 Iowa 96, 101, 116 N.W.2d 451, 454.

The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the attending circumstances, defendant's age, character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual. 24B C. J. S., Criminal Law, section 1980.

The trial court properly gave some consideration to the fact many offenses had been committed in other counties. Comparison of defendant's sentence with the other two indicates the court's attempt to exercise sound judgment.

III. It is our duty to carefully consider whether the punishment imposed is too severe. Code section 793.18. We have, however, consistently held that where the judgment imposed does not exceed the statutory maximum, it is only where an abuse of the trial court's discretion is shown that we will interfere. State v. Olander, 193 Iowa 1379, 1384, 186 N.W. 53, 55, 29

A. L. R. 306; State v. Simpson, 254 Iowa 637, 645, 118 N.W.2d 606, 611; State v. Schlak, 254 Iowa 669, 673, 117 N.W.2d 554, 555; State v. Kulish, 260 Iowa 138, 145, 148 N.W.2d 428, 433; State v. McCollom, supra.

 Our examination of the entire record satisfies us the trial court at all stages of the proceedings carefully and thoroughly considered the question of proper sentence of defendant.

We find no justification for modifying or reducing the penalty imposed.—Affirmed.

All JUSTICES concur.