STATE of Iowa, Appellee,

v.

Michael REMMERS, Appellant.

No. 59952.

Supreme Court of Iowa.

Nov. 23, 1977.

Mark E. Schantz, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen., and Jack W. Dooley, County Atty., for appellee.

McCORMICK, Justice.

Defendant appeals from a 70-year prison sentence entered upon his conviction of second-degree murder. He contends the sentence is so disproportionately severe as to constitute cruel and unusual punishment and unlawful because based in part upon an impermissible consideration. We find merit in the latter contention and remand for resentencing.

The State accused defendant of murdering Kaye Mesner in Iowa City on January 10, 1976. Pursuant to a plea bargain he entered a plea of guilty and was convicted of second-degree murder. An extensive sentencing hearing was held and a presentence investigation was ordered.

As a result of these proceedings the trial court possessed considerable information about defendant when the time came for sentencing on August 25, 1976. Although much of this information concerned the present charge, some of it disclosed defendant's background and personal characteristics.

Defendant was 29 at the time of sentencing. He was born out of wedlock in Missouri in 1946. His mother married in 1947 but led an unstable life and separated from her husband when defendant was six.

When he was nine defendant was arrested for burglary and placed in reform school. After he was released he lived in various foster homes and later with his stepfather. Between the ages of 17 and 27 defendant spent much of his time in penal institutions.

He falsified enlistment papers and entered the army in 1965. Six months later he was dishonorably discharged. In 1966 he was convicted of burglary in Arizona and served 15 months in prison. In 1967 he was convicted of burglary in Illinois and was incarcerated for one year. In 1969 he was convicted of two counts of armed robbery in Iowa and served four years and five months in the Fort Madison penitentiary.

During part of this period, while out of prison, he became addicted to heroin and sold drugs to support his habit.

While in the Fort Madison penitentiary defendant obtained his high school equivalency certificate and received training as a welder. After his parole in 1973 he moved to Iowa City and enrolled in the university. Shortly thereafter he left and obtained training as a welder at Kirkwood Community College. He worked as a welder for six months and was laid off. He traveled to California in the summer of 1975 and was arrested and convicted there on a seven-year-old drug charge. After serving a 60-day sentence he returned to Iowa.

In November 1975 defendant met Kaye Mesner in Iowa City. She was separated from her husband. She and defendant became lovers. Defendant was unemployed and spent much of his time in bars. At some point in this period he was charged with a drug delivery offense. In January he and Mesner quarreled on a couple of occasions. He had a pistol which he intended to use in a robbery. On January 10, 1976, when Mesner told him she intended to spend the night with another man, defendant killed her with two shots from his pistol. The present conviction is based on that homicide.

A psychologist and two psychiatrists testified at the sentencing hearing. In addition, a 1972 report on defendant from the

medical security facility at Oakdale was received in evidence. The psychologist said defendant had above average intelligence but only marginal ability to control his behavior under stress.

A psychiatrist called by defendant testified that the relationship between defendant and Mesner fit a pattern of domestic quarrel which often escalates into a violent outcome. He thought the chance defendant would kill again was low but the chance he would commit offenses like robbery was fairly high.

A state psychiatrist testified defendant was referred to Oakdale in 1972 because he was a behavioral problem in the prison. The Oakdale report showed he was uncooperative and rebellious. Defendant was diagnosed as an anti-social personality. The state psychiatrist said defendant's aggressiveness in situations of stress created a serious risk to society. He acknowledged that it is not uncommon for remission or "burn-out" of such aggressiveness to occur at ages 35 or 40.

The presentence investigators furnished statistical data from the department of social services showing sentences in Iowa for 27 convictions of second-degree murder between July 1, 1973, and June 30, 1975. The sentences ranged from 10 years to 60 years, with a mean of 35 years. Additional data was obtained showing how much time had actually been served by 10 men sentenced for second-degree murder who were released from prison on parole during that same period. That data showed the following:

| Sentence in Years | Year of Birth | Year Committed | Time Served |
|---|---|---|---|
| 25 | 1944 | 1971 | 2 yr. 10 mo. |
| 25 | 1912 | 1968 | 5 yr. 7 mo. |
| 25 | 1946 | 1962 | 11 yr. |
| 30 | 1941 | 1961 | 12 yr. 3 mo. |
| 50 | 1948 | 1970 | 3 yr. 6 mo. |
| 50 | 1929 | 1969 | 4 yr. 4 mo. |
| 50 | 1938 | 1964 | 9 yr. 6 mo. |
| 90 | 1924 | 1956 | 18 yr. |
| 99 | 1938 | 1964 | 9 yr. 4 mo. |
| 99 | 1931 | 1961 | 12 yr. 6 mo. |

The State argued defendant should receive a sentence of life imprisonment. Defendant argued he should receive a sentence in the lower range of those ordinarily imposed for second-degree murder. the trial court made the following comment about the parole data:

I might say that I and other district court judges have been somewhat surprised and concerned about the numerous instances of early release from prison by the board of parole of defendants sentenced on second degree murder convictions. I don't know what any of these cases are, but I cannot help but surmise that the judge who sentenced the man to 25 years certainly did not do so in the contemplation that he would be released in two years and ten months. I imagine the judge who imposed the 50 year sentence in the one case was surprised, if not shocked, if he later learned the man served only three years and six months. I imagine the judge who imposed the 50 year sentence on the defendant who got out after four years and four months was a bit dismayed, and some of the other releases reflected perhaps were surprises to the sentencing judges. I think that those figures are interesting, and I think it is appropriate for a judge in imposing sentence to keep in mind what the track record reveals.

The trial court sentenced defendant to 70 years in the penitentiary and filed the following statement of reasons for doing so:

Defendant pleaded guilty to murder in the second degree. I am satisfied from the evidence that the offense was a crime of passion committed in response to a provocation. (Defendant and the victim were lovers, and defendant shot the victim to death immediately after she had stated to him that she was going to spend the night with another man.)

The nature of the offense itself indicates a sentence in the lower range permitted by law. However, the nature of the offense itself is but one factor to be considered by the sentencing judge.

"The trial court and we on review should weigh and consider all pertinent matters in determining proper sentence, including the nature of the offense, the

attending circumstances, defendant's age, *character and propensities and chances of his reform. The courts owe a duty to the public as much as to defendant in determining a proper sentence. The punishment should fit both the crime and the individual." State v. Cupples,* 260 Iowa 1192, 1197, 152 N.W.2d 277, 280. (Emphasis supplied.)

The foregoing language from the *Cupples* case was quoted with approval by the Iowa Supreme Court in *State v. Overstreet,* 243 N.W.2d 880 at 887, a decision filed on June 30 of this year. In the *Overstreet* case the Court affirmed the trial judge's sentence of life imprisonment for second degree murder.

The following considerations lead me to conclude that the lengthy term of years sentence I have imposed is appropriate and just:

1. At the time of the murder, defendant was in possession of a loaded gun because he had obtained its possession the preceding night for the purpose of committing an armed robbery. (By the time of the murder, he had cancelled his plans to commit the robbery and had decided to dispose of the gun by throwing it in the Iowa River, but this does not alter the original reason for which he acquired it.)

2. Defendant's past criminal record, including two robberies with aggravation.

3. The opinions of psychiatrists who have examined defendant that he is an anti-social personality, possessed of latent anger, who tends to resort to aggressiveness as a back-up mechanism in dealing with problems when his primary mechanism of using his personality and likeableness fails. One psychiatrist expressed the opinion that there is a "significant likelihood" of risk to society if there is an early release from prison of defendant.

4. Statistics contained in Court's Exhibit 1, a copy of which is attached hereto, establish a likelihood of release on parole within a few years, perhaps less than five if a sentence of 50 years or less is imposed.

The length of the sentence imposed is selected in the hope that it will keep defendant confined until maturation and "burn-out" of his aggressiveness reasonably assure that his release into society will not present a threat to society.

A copy of the statement of reasons was forwarded to the warden of the penitentiary.

The questions in this appeal are whether the sentence is so disproportionately severe that it constitutes cruel and unusual punishment and whether the trial court's attempt to influence parole possibilities, shown in point 4 of the statement of reasons, was impermissible.

■ I. *Proportionality.* Principles governing application of the cruel and unusual punishment prohibition of the eighth amendment of the United States Constitution have been elucidated at length by the Supreme Court in *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion). See also *Coker v. Georgia,* —— U.S. ——, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Hart v. Coiner,* 483 F.2d 136 (4 Cir. 1973), cert. denied, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1974). Under the eighth amendment a sentence is not excessive when it does not involve the unnecessary wanton infliction of pain and when it is not grossly out of proportion to the severity of the crime.

Defendant attacks the statute under which he was sentenced, § 690.3, The Code, as applied to him rather than on its face. Therefore the issue is whether the sentence he received violates the constitutional standard in the circumstances here.

■ In arguing this sentence is disproportionately severe in violation of the constitutional standard, defendant relies mainly on his degree of culpability and the relative severity of his sentence within the statutory range and in comparison to other sentences for second-degree murder. However, conformity of a particular sentence with the constitutional standard is not measured solely by reference to the facts of the offense involved. Sentencing courts have leeway to consider other pertinent

matters including the defendant's character and propensities. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *Pennsylvania v. Ashe*, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43 (1937); *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967) ("The punishment should fit both the crime and the individual.").

■ This 29-year old man had been convicted previously of four serious crimes, two of which involved threats to human life. His criminality and propensity to violence had not been deterred by three periods of extensive imprisonment. He had spent most of his adult life either committing crimes or serving sentences for them. Finally, he chose to resolve a quarrel with Kaye Mesner by murdering her. Alienists testified he constituted a continuing threat to public safety; they differed only about what kinds of crimes he would be likely to commit in the future. It was reasonable for the trial court to conclude the chances were not good that defendant would reverse the pattern of living he manifested throughout his adult life during a short period of incarceration.

The court's duty was to select the maximum term defendant would serve. The sentence would be reduced as a matter of right if defendant earned statutory "good time". § 246.39, The Code. Moreover, he would be eligible for parole the day he entered the prison. § 247.5, The Code. As the statistics of the department of social services demonstrate, prisoners ordinarily serve a minor fraction of their maximum sentences. They are usually paroled when the board of parole, in its discretion, determines that its treatment objectives have been accomplished. See Iowa Administrative Code §§ 615–4.1 and 615–4.2 ("The board of parole may release on parole any person whom it has the power to release, when in its opinion there is reasonable probability that such person can be released without detriment to the community or to that person.").

■ We do not find an unconstitutional disproportionality by reason of the length of sentence in this case. See *State v. Hall*, 227 N.W.2d 192 (Iowa 1975). See also *Davis v. Zahradnick*, 432 F.Supp. 444 (W.D.Va. 1977).

II. *Consideration of parole.* Defendant's second contention is that the length of his sentence resulted in part from an impermissible effort by the trial court to control the amount of time he would actually serve. Defendant does not accuse the trial court of an abuse of discretion. Instead he relies on the line of cases in which we have vacated sentences when the record showed the sentencing judge relied on an impermissible determining factor in pronouncing sentence. See *State v. Nichols*, 247 N.W.2d 249 (Iowa 1976) (defendant's failure to plead guilty); *State v. Drake*, 224 N.W.2d 476 (Iowa 1974) (failure to plead guilty); *State v. Jackson*, 204 N.W.2d 915 (Iowa 1973) (general order by judges establishing a minimum penalty); *State v. Milliken*, 204 N.W.2d 594 (Iowa 1973) (defendant's inability to pay a fine).

Moreover, the differences among members of this court regarding whether a sentencing judge should be required to state the reason for selecting a particular sentence are not involved here. See *State v. Peckenschneider*, 236 N.W.2d 344 (Iowa 1975). In the present case the trial court filed a statement of reasons, and the challenge involves whether one of them is a permissible consideration.

Defendant asserts that the trial court's attempt to influence parole possibilities by imposing a lengthier sentence than might otherwise be appropriate conflicts with the sentencing structure established by the legislature and invades the prerogative of the board of parole. In sentencing defendant for second-degree murder, the trial court was limited to selecting the maximum term of incarceration. § 690.3, The Code. This is because probation is not available under § 789A.1, The Code, to a defendant convicted of murder, and exclusive authority to determine the minimum term of incarceration is vested in the board of parole under § 247.5, The Code, unless the court sentences a defendant to life imprisonment, precluding parole. The ultimate determina-

tion of the length of sentence this defendant will actually serve within the maximum rests with the parole board. See *State v. Cupples*, 260 Iowa 1192, 152 N.W.2d 277 (1967); *State v. Kulish*, 260 Iowa 138, 148 N.W.2d 428 (1967). Statutory "good time" provisions are also applicable. § 246.39, The Code. Defendant argues that contrary to this statutory structure the trial court selected a maximum sentence "explicitly designed to induce the board of parole to adopt a 'de facto' minimum and explicitly designed to affect its legislatively-granted discretion with respect to the actual release date for Michael Remmers".

The trial court's expression of dissatisfaction with parole practices and its acknowledged reliance upon a perceived correlation between the length of sentence and likelihood of parole demonstrate that the length of sentence here was based in part upon a desire to assure defendant would serve a longer period before parole than he would if a shorter sentence were imposed. The record does not disclose what defendant's sentence would have been if this had not been a factor in the court's decision. It does show the court was not willing merely to make a recommendation against early parole.

In determining whether the timing of parole was a permissible factor for the trial court to consider, we do not pass on the wisdom of the sentencing system established by the legislature. Sentencing authority is statutory in Iowa. *State v. Wright*, 202 N.W.2d 72 (Iowa 1972). Our legislature has elected in most instances to deny authority to judges to fix minimum sentences. In addition, it has in most instances granted exclusive power to the board of parole to determine what amount of time will actually be served. See § 247.5, The Code. Some other jurisdictions have different systems. See, e. g., *United States v. Salerno*, 538 F.2d 1005 (3 Cir. 1976); *People v. Schmidt*, 25 Ill.App.3d 1035, 324 N.E.2d 246 (1975). The trial court in the present case lacked statutory authority to fix a minimum sentence for defendant; the statutes vest that prerogative in the board of parole.

Our legislature has demonstrated it knows how to restrict the discretion of the board of parole when it wishes to do so. It may do so by prescribing a minimum sentence for a particular offense. See, e. g., § 321.281, The Code; *State v. Jackson*, 204 N.W.2d 915 (Iowa 1973). It may also do so by precluding parole, as with a life sentence. See § 247.5, The Code. It may limit eligibility for parole, as it has done for persons imprisoned for felonies like second-degree murder under the criminal code which will take effect January 1, 1978. Acts 66 G.A. ch. 1245, ch. 3, § 604 (a person incarcerated for a felony who has a prior conviction of a forcible felony will be ineligible for parole until he serves at least one-half the maximum term of his sentence). The legislature has imposed no such limitation on the board of parole in the present situation.

It is also significant that the legislatively-approved administrative rules of the board of parole disavow ordinary consideration of length of sentence in determining eligibility for parole. They include these statements:

> Length of sentence shall not normally be considered in determining parole. The nature of the offense, previous offenses, recidivism record and general attitude will be considered regardless of length of sentence. Iowa Administrative Code § 615–4.2(2).

Even if it were appropriate or possible for a sentencing court to change this parole board policy by selection of a more severe sentence in a given case, the statistics relied on by the trial court in the present case are of dubious value as a premise for doing so. They reveal nothing about the character and propensities of the offenders involved. The assumption they establish a correlation between length of sentence and parole possibilities is inconsistent with the parole rules in effect at the time this sentence was pronounced. This assumption does not give effect to the likelihood that the sentences in the various cases were based on relatively accurate trial court assessments of the character and propensities of those sentenced.

Apart from these circumstances, the figures do not establish a uniform correlation between length of sentence and release date. The release dates vary considerably for similar sentences. In addition, the men sentenced to the four shortest terms, three of 25 years and one of 30 years, served an average of seven years and eleven months, whereas the three men with 50-year sentences served an average of only five years and nine months. These statistics are not a reliable basis for selecting length of sentence in an effort to influence the parole decision.

The legislature has neither given the judicial branch that authority nor equipped the judiciary to exercise it. In an analogous situation, but where the jury had the sentencing responsibility, the Kentucky Court of Appeals said:

> Under our theory of separation of governmental powers, it is the duty of the judiciary to obtain a conviction of those guilty of crime. But once that conviction has been obtained and the sentence imposed, it is the duty of other departments of government to enforce the sentence and to determine when and under what circumstances the prisoner will be eligible for release. Therefore, when the judiciary attempts to anticipate the rules of the legislative and executive departments relating to the parole of prisoners, and attempts, in effect, to circumvent those rules it infringes upon the prerogatives of other departments of government. *Broyles v. Commonwealth*, 267 S.W.2d 73, 76 (Ky.1954).

Other courts have reached the same conclusion in similar cases. See *Lawley v. State*, 264 Ala. 283, 87 So.2d 433, 435 (1956) ("the jury was planning to add to the length of sentence in order to compensate for a parole before the entire sentence was served"); *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86, 92 (1971) ("The subject matter is entirely alien to a judicial proceeding since it is handled by another department of government, the executive."); *People v. Morse*, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33 (1964); *Smith v. State*, 317 A.2d 20 (Del.Super.1974); *McKuhen v. State*, 102

Ga.App. 75, 115 S.E.2d 625 (1960); *Deming v. State*, 235 Ind. 282, 133 N.E.2d 51 (1956); *Adams v. Commonwealth*, 263 S.W.2d 103 (Ky.1953); *State v. White*, 27 N.J. 158, 142 A.2d 65, 76 (1958) ("It is no more proper for a jury to conclude that death [would] be a proper penalty because a life sentence may be commuted or the defendant paroled, than it would be for a trial judge in other criminal cases deliberately to impose an excessive sentence to frustrate the statutory scheme committing parole to another agency."); *State v. Conner*, 241 N.C. 468, 85 S.E.2d 584 (1955); *Carr v. State*, 417 P.2d 833 (Okl.Cr.App.1966); *Graham v. State*, 202 Tenn. 423, 304 S.W.2d 622 (1957); *Jones v. Commonwealth*, 194 Va. 273, 72 S.E.2d 693 (1952); *Coward v. Commonwealth*, 164 Va. 639, 178 S.E. 797 (1935).

Under the sentencing statutes applicable here, the exclusive prerogative to determine defendant's minimum sentence rested in the board of parole by reason of its sole authority to make parole decisions. The judicial sentencing decision is not an appropriate means for attempting to circumvent this principle. By basing the length of sentence in part on a desire to lengthen the minimum sentence defendant would serve, the trial court in this case sought to pass judgment on an issue foreclosed to the court and to prevent the proper body from deciding the issue at the proper time. See *People v. Morris*, 388 P.2d at 41.

■ We hold it was impermissible for the trial court to do so. Even though it might be argued that the parole board may and probably will exercise its authority without regard to this effort, the fact remains that the sentence selected by the court rests in part on an impermissible determining factor. It establishes a term which defendant must serve if he is not sooner paroled, subject to reduction for good time. We have no way of knowing what sentence would have been pronounced here without consideration of the parole question. Therefore we vacate the sentence and remand to the trial court for resentencing without regard to that factor.

We do not intimate that the new sentence must be less than the present sentence nor do we suggest that the sentence may not be accompanied by a recommendation against early parole.

REMANDED FOR RESENTENCING.

MASON, RAWLINGS, ULHENHOPP and REYNOLDSON, JJ., concur.

MOORE, C. J., and LeGRAND, REES and HARRIS, JJ., dissent.

LeGRAND, Justice (dissenting).

I dissent from the majority opinion because I believe the sentence imposed by the trial court was based upon appropriate discretionary considerations.

The majority cites *People v. Morse*, 60 Cal.2d 631, 36 Cal.Rptr. 201, 388 P.2d 33 (1964); *State v. White*, 27 N.J. 158, 142 A.2d 65 (1958); and *Broyles v. Commonwealth*, 267 S.W.2d 73 (Ky.App.1954) as authority for its position. These cases involve trials in which *juries* were considering the alternatives of punishment at the same time they were determining guilt. The manifest danger of compromising one against the other makes such cases wholly dissimilar to the one at hand, where guilt had already been separately decided.

Neither is there any analogy between our own cases referred to by the majority for support. In *State v. Jackson*, 204 N.W.2d 915, 917 (Iowa 1973), we held judges who decided in *advance* how they were to impose sentence in all future drunk driving cases had abdicated their individual responsibility to act upon the circumstances before them in each case. Of course, such a prior determination violates a judge's sentencing responsibility.

In both *State v. Drake*, 224 N.W.2d 476, 479–480 (Iowa 1974) and *State v. Nichols*, 247 N.W.2d 249, 255 (Iowa 1976) we said a trial court could not penalize a defendant for exercising his constitutional right to trial instead of pleading guilty. In *State v. Milliken*, 204 N.W.2d 594 (Iowa 1973) a prison term was given because defendant could not pay a fine.

No such principles are involved here. In the present case § 690.3, The Code, directs the judge to impose a term ranging from 10 years to life imprisonment. The exact term of years is left to the trial court's discretion. Such discretion involves consideration of a wide range of factors. See *State v. Stakenburg*, 215 N.W.2d 265, 266–267 (Iowa 1974) and *State v. Cupples*, 260 Iowa 1192, 1197, 152 N.W.2d 277, 280 (1967). The ultimate responsibility of the trial judge is to select the number of years which he feels defendant should serve.

It is naive to expect a trial judge not to know or consider that sentences are seldom, if ever, served to their completion. Of course, the parole board has the final say as to how long a defendant will serve. I do not understand the trial judge challenges this right. But it is the trial judge who initially fixes the term of years based on the time *he* thinks a defendant should serve.

Except for some dictum in *State v. White, supra*, neither the majority nor the defendant has been able to cite a single supporting authority. Failure to cite authority is some indication there is none. *Drabbels v. Skelly Oil Co.*, 155 Neb. 17, 50 N.W.2d 229, 231 (1951).

I agree with the rationale expressed in *State v. Fenton*, 86 Ariz. 111, 341 P.2d 237, 241–242 (1959). In that case the trial court had avowedly considered the possibility of later parole in fixing sentence. The Arizona Supreme Court affirmed, stating this was a factor properly taken into account by the sentencing judge. It is true, as defendant points out, the Arizona death statute was later declared unconstitutional but not for the manner of imposing sentence in *Fenton*. See *State v. Endreson*, 109 Ariz. 117, 506 P.2d 248, 254 (1973).

It is interesting to note that, although defendant appeals on the issue the trial court used an impermissible factor in reaching the sentence imposed, virtually all of his argument is devoted to abuse of discretion. Yet the majority says this is not an abuse-of-discretion case. I don't think it is either; nor do I think there was error in sentencing.

I would affirm, leaving it, as is always the case, to the parole board to determine when defendant should be released.

MOORE, C. J., and REES and HARRIS, JJ., join this dissent.