# IN THE SUPREME COURT OF IOWA

No. 22–1507

Submitted January 23, 2024—Filed March 29, 2024

**STATE OF IOWA,**

Appellee,

vs.

**JACOB LEE GOBLE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Washington County, Shawn R. Showers, Judge.

The defendant seeks further review of a court of appeals decision that rejected his claim that the sentencing court relied on an improper factor by mentioning parole. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which Mansfield, McDonald, and Oxley, JJ., joined. McDermott, J., filed a special concurrence. May, J., filed a special concurrence, in which Christensen, C.J., joined.

Christopher A. Clausen of Clausen Law Office, Ames, for appellant.

Brenna Bird, Attorney General, and Thomas E. Bakke and Anagha Dixit, Assistant Attorneys General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must decide whether the district court relied on an improper factor when it mentioned parole while sentencing the defendant to prison. The defendant, a recidivist drug offender, pleaded guilty to a class "D" felony and was sentenced to an indeterminate prison sentence of up to five years. In explaining the reasons for this sentence, the district court emphasized the defendant's need for a structured setting for his rehabilitation and, in that context, noted he would "be paroled at some point." The defendant appealed, contending that the court considered an improper factor—parole—in sentencing him. We transferred the case to the court of appeals, which affirmed his sentence, noting that Iowa's truth-in-sentencing statute, Iowa Code § 901.5(9)(*b*) (2021), requires public disclosure of his parole eligibility. We granted the defendant's application for further review.

On our review, we hold that the district court did not rely on an improper sentencing factor by mentioning parole as affecting the defendant's actual time served in the context of his need for rehabilitation and protection of the community. The district court did nothing to circumvent the parole board's discretion in determining his release date. The district court's reference to parole is authorized by statute. Accordingly, we affirm his sentence and the decision of the court of appeals.

**I. Background Facts and Proceedings.**

On April 26, 2022, Jacob Lee Goble pleaded guilty to possession of a controlled substance, third or subsequent offense, a class "D" felony, in violation of Iowa Code section 124.401(5). In his written guilty plea, he admitted to knowingly and intentionally possessing methamphetamine.

In August, the district court held a sentencing hearing. The State recommended sentencing Goble to a five-year prison term based on his "long

criminal history," "history of unstable housing and unstable employment," and the presentence investigation report's recommendation for incarceration. Goble's counsel recommended a five-year suspended sentence and placement "on probation to the Department of Corrections or halfway house." Goble's counsel pointed to his successful completion of treatment "a few times in the last five years," his current job and housing situation, and his need for treatment while on probation.

The district court agreed with the State, based on "what will provide maximum opportunity for [Goble's] rehabilitation and at the same time protect the community from further offenses by [Goble]," and sentenced him to an indeterminate term of incarceration of up to five years. The district court mentioned parole once in explaining the reasons for Goble's sentence:

> And generally when I sentence an individual, I go straight to Iowa Code Section 907.5 to determine -- if I'm determining whether prison or probation is appropriate, and that code section lists your age as being a consideration. You're 30 years old. You're relatively young, but you're still old enough to know better.
>
> Your prior record of convictions and your prior record of deferments of judgment, if any, and the Court notes at pages -- there were 5 pages of the 17 pages of the PSI that are just your criminal history.
>
> Your employment circumstances, which I do think you're employable and you seem to have a willingness to work, which I would say is a mitigating factor, but you don't have a job right now because you've been incarcerated here.
>
> Your substance abuse seems to be one of your biggest problems, but you have had opportunity to be in treatment before and to varying degrees of success.
>
> I also consider the nature of the offense committed, which is a class D felony. There's no victims that got harmed in this, but based on the factors that I have to consider, and the fact that you're not requesting a more intense program, like a drug court, the best thing for your rehabilitation is to send you to Oakdale, for them to classify you, and then for you to be -- I don't know if they're going to

send you to a different facility or keep you at Oakdale because you've done so much time in county jail.

*It's a five-year sentence and it's a drug charge, so you're not going to do a lot of time, but you will be paroled at some point* and *you're going to have to make a decision at that point, am I going to keep doing this or am I going to turn my life around*, because the only thing -- you need to go to counseling, you need to go to treatment, you need to go to meetings, you need to have people there to ensure that you're not using, and if I just put you on probation, I'm not a betting man, but I am almost 100 percent sure that we would be back in on a revocation within a matter of weeks, or at least months, based on your previous -- I'm just -- the best indicator of the future is what's in the past, so I'm going to sentence you to the term not to exceed five years and not suspend the sentence. IMCC is the reception center, and the Washington County sheriff will deliver you, or their designee, to IMCC. You get credit for all time served on this charge.

(Emphasis added.)

Goble appealed, arguing that the district court considered an improper sentencing factor by referring to parole as reducing "how long [he] would spend in custody." The State argued that the sentencing court's comment, in context, was permissible to "encourage Goble down the path of rehabilitation" and that Iowa's sentencing statutes allow for discussion of parole.

We transferred the case to the court of appeals, which affirmed Goble's sentence, stating:

Goble failed to demonstrate that the [sentencing] court relied on an improper factor at sentencing. Pronouncing that a defendant's term of incarceration may be reduced by earned time or that the defendant may be eligible for parole is required by statute. Iowa Code § 901.5(9)(a)–(b). "Sentencing courts are not prohibited from referring to the possible effects of parole practices on the time that a defendant will actually serve." *State v. Jason*, No. 14–1162, 2015 WL 6510334, at *12 (Iowa Ct. App. Oct. 28, 2015). The district court did not improperly consider Goble's parole eligibility when formulating Goble's sentence.

Goble applied for further review, and we granted his application.

## II. Standard of Review.

"Our review of a sentence imposed in a criminal case is for correction of errors at law." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "We will not reverse the decision of the district court absent an abuse of discretion or some defect in the sentencing procedure." *Id.* "A sentencing court's decision to impose a specific sentence that falls within the statutory limits 'is cloaked with a strong presumption in its favor, and will only be overturned for an abuse of discretion or the consideration of inappropriate matters.' " *State v. Boldon*, 954 N.W.2d 62, 73 (Iowa 2021) (quoting *Formaro*, 638 N.W.2d at 724).

"Nevertheless, '[i]f a court in determining a sentence uses any improper consideration, resentencing of the defendant is required . . . even if it was merely a "secondary consideration." ' " *Id.* (alteration and omission in original) (quoting *State v. Grandberry*, 619 N.W.2d 399, 401 (Iowa 2000) (en banc)). The defendant "must overcome the presumption in favor of the sentence by affirmatively demonstrating the court relied on an improper factor." *State v. Damme*, 944 N.W.2d 98, 106 (Iowa 2020).

## III. Analysis.

We must decide whether the sentencing court relied on an improper factor when it stated:

> It's a five-year sentence and it's a drug charge, so you're not going to do a lot of time, but *you will be paroled at some point* and you're going to have to make a decision at that point, am I going to keep doing this or am I going to turn my life around . . . .

(Emphasis added.) Goble quotes the foregoing passage in arguing that the sentencing court improperly considered parole as a factor in imposing his prison sentence. The State counters, and the court of appeals agreed, that sentencing courts may properly mention parole eligibility as affecting the duration of a prison sentence. We agree that the district court's reference to parole was proper

as bearing on the time Goble may serve in prison, which was relevant to the court's goal of rehabilitation and protection of the community.

As the State notes, the district court mentioned parole in the context of encouraging rehabilitation and protecting the community. The court's mention of parole came in its discussion that prison would help Goble "turn [his] life around":

> [Y]ou need to go to counseling, you need to go to treatment, you need to go to meetings, you need to have people there to ensure that you're not using, and if I just put you on probation, I'm not a betting man, but I am almost 100 percent sure that we would be back in on a revocation within a matter of weeks, or at least months, based on your previous -- I'm just -- the best indicator of the future is what's in the past, so I'm going to sentence you to the term not to exceed five years and not suspend the sentence.

Parole would reduce the time Goble would have in a controlled prison setting to combat his apparent methamphetamine addiction. We see nothing improper about mentioning parole in this context.

In *State v. Formaro*, we explained why the sentencing court is afforded discretion in crafting a defendant's sentence to further goals, including rehabilitation of the offender and protection of the community:

> In applying the abuse of discretion standard to sentencing decisions, it is important to consider *the societal goals of sentencing criminal offenders, which focus on rehabilitation of the offender and the protection of the community from further offenses*. It is equally important to consider the host of factors that weigh in on the often arduous task of sentencing a criminal offender, including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform. Furthermore, before deferring judgment or suspending sentence, the court must additionally consider the defendant's prior record of convictions or deferred judgments, employment status, family circumstances, and any other relevant factors, as well as which of the sentencing options would satisfy the societal goals of sentencing. The application of these goals and factors to an individual case, of course, will not always lead to the same sentence. Yet, this does not mean the choice of one particular sentencing option over another constitutes error.

Instead, it explains the discretionary nature of judging and the source of the respect afforded by the appellate process.

638 N.W.2d at 724–25 (emphasis added) (citations omitted).

The district court gave valid reasons for declining to suspend Goble's prison sentence and did not rely on an improper factor by mentioning parole eligibility as affecting the time Goble could be incarcerated in a controlled setting to assist his rehabilitation and protect the community. As the court of appeals noted, Iowa's truth-in-sentencing law requires disclosure of parole eligibility. The sentencing court, by statute, "shall publicly announce . . . [t]hat the defendant may be eligible for parole before the sentence is discharged." Iowa Code § 901.5(9)(*b*). The district court's reference to parole in sentencing Goble was required by this legislation.[1] Goble's challenge to his sentence fails.

Another statute confirms that district courts are not divorced from considering parole at the time of sentencing. To the contrary, Iowa judges are directed to furnish the parole board itself with a statement of the judge's recommendation relating to parole. Iowa Code section 901.9, entitled "Information for parole board," provides:

> At the time of committing a defendant to the custody of the director of the Iowa department of corrections for incarceration, the trial judge and prosecuting attorney shall, and the defense attorney may, furnish the board of parole with a full statement of their recommendations relating to release or parole.

This statute provides a mechanism for the sentencing court to offer input directly to the parole board.[2] Sentencing courts can and should be mindful of parole.

---

[1]Indeed, for certain offenses, the sentencing court determines the date the offender becomes eligible for parole within the range prescribed by the legislature. *See, e.g.*, Iowa Code § 901.11.

[2]We view the duty imposed under section 901.9 to be directory, not mandatory. *Cf. Save Our Stadiums v. Des Moines Indep. Cmty. Sch. Dist.*, 982 N.W.2d 139, 148–49 (Iowa 2022) (describing the difference between directory and mandatory duties).

Our cases, however, caution against manipulating sentences to circumvent the parole board's exclusive authority to decide the offender's date of release. *See generally Bomgaars v. State*, 967 N.W.2d 41, 55 (Iowa 2021) (discussing the interplay between judicial sentencing authority and parole board discretion). We have said that "a sentencing court may not impose 'consecutive sentences to thwart a perceived risk of early parole.'" *State v. Bentley*, 757 N.W.2d 257, 266 (Iowa 2008) (quoting *State v. Hulbert*, 481 N.W.2d 329, 335 (Iowa 1992)). But that is not what happened here. The district court sentenced Goble to one indeterminate five-year sentence; consecutive sentences are not at issue in this case.

More broadly, we have held that it is impermissible for the district court to impose a longer prison sentence for the purpose of delaying the defendant's release on parole. *State v. Remmers*, 259 N.W.2d 779, 784–85 (Iowa 1977) (en banc). In *State v. Remmers*, the defendant was convicted of second-degree murder. *Id.* at 780. At that time, Iowa law gave the district court discretion to select a sentence between ten years to life imprisonment for that crime. *See id.* at 786 (LeGrand, J., dissenting). At sentencing, the district court considered statistics showing the actual time served before release on parole increased with longer sentences. *Id.* at 781 (majority opinion). The district court imposed a longer sentence based on "what the track record reveals." *Id.* Remmers argued that the district court "attempt[ed] to influence parole possibilities by imposing a lengthier sentence than might otherwise be appropriate," which "conflicts with the sentencing structure established by the legislature and invades the prerogative of the board of parole." *Id.* at 783. We agreed, and concluded that the district court relied on an improper factor:

> The trial court's expression of dissatisfaction with parole practices and its acknowledged reliance upon a perceived correlation

> between the length of sentence and likelihood of parole demonstrate that the length of sentence here was based in part upon a desire to assure defendant would serve a longer period before parole than he would if a shorter sentence were imposed.

*Id.* at 784. We held that "the exclusive prerogative to determine defendant's minimum sentence rested in the board of parole by reason of its sole authority to make parole decisions." *Id.* at 785. We emphasized that "[t]he judicial sentencing decision is not an appropriate means for attempting to circumvent this principle." *Id.* We concluded that "[b]y basing the length of sentence in part on a desire to lengthen the minimum sentence defendant would serve, the trial court in this case sought to pass judgment on an issue foreclosed to the court and to prevent the proper body from deciding the issue at the proper time." *Id.*

Justice May's thoughtful special concurrence contends that *Remmers* and its progeny should be overruled as wrongly decided and causing confusion in Iowa sentencing practices. But no party to this appeal argued for overruling *Remmers* or its progeny. "We do not ordinarily overrule our precedent sua sponte." *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 645 n.4 (Iowa 2019) (quoting *Est. of McFarlin v. State*, 881 N.W.2d 51, 59 (Iowa 2016)); *see also Feld v. Borkowski*, 790 N.W.2d 72, 78 n.4 (Iowa 2010) ("[W]e do not create issues or unnecessarily overturn existing law sua sponte when the parties have not advocated for such a change.").

In any event, *Remmers* is distinguishable and does not control the outcome of this appeal. As the court of appeals previously recognized, under *Remmers*, it is "improper for the district court to formulate a particular sentence to avoid an early release under the parole system," and the district court must "not try to 'circumvent' the parole system by selecting a sentence that would deprive the parole board of discretion it would otherwise have." *State v. Mohr*, No. 10–0284, 2010 WL 4483991, at *5 (Iowa Ct. App. Nov. 10, 2010). But it was not improper

to discuss the defendant's likely release on parole when imposing a ten-year sentence for burglary. *Id.* at *5–6.

The district court in *Remmers* had the discretion to choose from a range of years for the prison term, and it deliberately chose a longer sentence to delay the defendant's ultimate release on parole. 259 N.W.2d at 783–84. That is not what happened here. The district court's choice was limited to imposing a five-year indeterminate sentence with immediate parole eligibility or suspending that sentence and placing Goble on probation. The court did not impose a longer sentence to circumvent the parole board's discretion.

Goble's application for further review cites only two cases for the proposition that sentencing courts are prohibited from considering "the likely amount of time to be served prior to release": *Boldon*, 954 N.W.2d 62, and *State v. Bowen*, No. 22–0278, 2022 WL 16985663 (Iowa Ct. App. Nov. 17, 2022). Neither case compels reversal of Goble's sentence.

*Boldon* addressed consideration of the defendant's juvenile offense history, not consideration of parole. 954 N.W.2d at 73–74. While *Boldon* reiterated that consideration of an improper factor requires resentencing, the defendant must first establish that the sentencing court relied on an improper factor, which Goble has failed to do. *See id.* at 73.

*Bowen*, an unpublished decision of the court of appeals, reversed a prison sentence imposed in a probation revocation proceeding after the district court revoked the defendant's deferred judgment. 2022 WL 16985663, at *1, *3. The appellate court noted that the district court could have jailed Bowen for contempt for his probation violation for a determinate term up to six months without a possibility of parole instead of imposing a prison sentence with immediate parole eligibility. *Id.* at *2. The court of appeals concluded that the sentencing court's colloquy with counsel about Bowen's immediate eligibility for parole and likely

early release violated "the rule against considering timing of parole in choosing a sentence." *Id.* Accordingly, the appellate court reversed the sentence and revocation of the deferred judgment and remanded the case for a "new probation-revocation disposition determination . . . by a different judge." *Id.* at *3. The State did not apply for further review.

The *Bowen* court concluded that mere "consideration of the timing of parole is an improper sentencing factor." *Id.* at *2. We disagree. Rather, the sentencing court may consider the timing of parole, *see, e.g.,* Iowa Code §§ 901.5(9)(*b*), .9, .11, but may not use parole as a factor to select a sentence to circumvent the parole board's authority. *See Remmers*, 259 N.W.2d at 785. The district court in *Bowen* did not impose a longer sentence or consecutive sentences to circumvent the parole board's discretion; the parole board's discretion remained intact given Bowen's immediate parole eligibility. 2022 WL 16985663, at *2.

When reviewing Goble's sentence, the court of appeals correctly applied our precedents. As the *State v.Mohr* court aptly observed, judges can and should consider parole as possibly affecting the length of time actually served:

> In short, we do not read the precedents as invalidating any sentence where the district court refers to the possible effects of parole on the time the defendant will actually serve. That would be an odd rule of law, because a conscientious judge undoubtedly thinks about those matters. The district court, when it sentenced Mohr, concluded it would be "best for him to receive treatment in the structured environment and the programming available at the Department of Corrections," and that a ten-year sentence on the burglary charge would achieve that objective while also enabling Mohr to be paroled when he demonstrated he had completed the necessary counseling and treatment to the department's satisfaction. That was a proper sentence.

2010 WL 4483991, at *6 (citing *State v. Vanover*, 559 N.W.2d 618, 635 (Iowa 1997) (holding a district court's statement comparing the amount of time the

defendant would likely serve, given parole considerations, under the defendant's sentencing proposal to the amount of time he would serve under the sentence imposed by the court did not "interfere with [the defendant's] parole eligibility")).

We reach the same conclusion today. The sentencing court properly considered Goble's need for a structured prison setting for purposes of his rehabilitation and protection of the community. And the sentencing court properly considered parole as bearing on the amount of time Goble would likely serve. Nothing about Goble's sentence circumvents the parole board's discretion. Goble was, and is, immediately eligible for parole.

Goble "must overcome the presumption [of validity] in favor of the sentence by affirmatively demonstrating the court relied on an improper factor." *Damme*, 944 N.W.2d at 106. Goble has failed to show that the district court relied on an improper factor. His challenge to his sentence fails.

**IV. Disposition.**

For those reasons we affirm the decision of the court of appeals and the district court's sentence.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mansfield, McDonald, and Oxley, JJ., join this opinion. McDermott, J., files an opinion concurring specially. May, J., files an opinion concurring specially, in which Christensen, C.J., joins.

**M**c**D**ERMOTT, **Justice (concurring specially).**

I concur in the majority's opinion except for its criticism of the court of appeals' reasoning in *State v. Bowen*, No. 22–0278, 2022 WL 16985663 (Iowa Ct. App. Nov. 17, 2022). I'm puzzled that we're reaching to declare disagreement with a court of appeals decision that no one has suggested was erroneous. The State never sought further review from our court challenging the decision. In this case, the State doesn't even mention—let alone criticize—*Bowen* in its appeal brief. *Bowen* is not mandatory authority for our court to follow or distinguish. It is, and remains, an unpublished court of appeals opinion.

In any event, a full reading of the *Bowen* court's analysis shows, in my view, that the court of appeals faithfully applied our holding in *State v. Remmers*, 259 N.W.2d 779, 785 (Iowa 1977) (en banc), and one of its own holdings in *State v. Thomas*, 520 N.W.2d 311, 313–14 (Iowa Ct. App. 1994) (Cady, J.). The court of appeals quoted at length the exchange that occurred regarding the defendant's sentence:

> THE COURT: We had a brief off-the-record discussion before we started. And I thought you had said 286 days in jail. Is it 284?
>
> DEFENSE COUNSEL: I'm sorry. It was 284 on Monday, Your Honor. Two eight-six. You are right.
>
> THE COURT: So assuming forty-two or forty-four days of treatment, Mr. Bowen would get credit for 328 to 330 days. [Prosecutor], if I sent Mr. Bowen are they going to turn him loose as soon as he gets there?
>
> PROSECUTOR: On this ten-year sentence he's immediately eligible for parole. I can't tell you what department of corrections would or when they would parole him. I mean, what I would say is if—if you don't mind, it's his choice that he's been in for 284 days.
>
> THE COURT: I—I get all that.

PROSECUTOR: So—but, yes, he would be—he would be granted credit. There's no minimum on this. So—and I—I'd have to look it up. I—I don't think we're supposed to consider when his discharge date would be. I—I think it's just whether a prison sentence is appropriate. I—I think that's a lot easier said than done. I think the reality of the matter is, yeah, he would be—he's burned a good bit of that prison sentence. But I—I couldn't give you a—I wouldn't want to put on the record a number and it would be wrong. But he would be—regardless of the 284 days, he would be immediately eligible for parole. And I know they would use those 284 days for calculating his parole date.

THE COURT: [Defense counsel], do you have any idea of what the turnaround time is right now?

DEFENSE COUNSEL: Your Honor, I do not. I believe the discharge at the time that it was incurred actually had the—the one-third and the court would have to affirmatively waive the mandatory minimum on it. Or else you have I think it's a twenty-month minimum by the time they applied good time. But I—I didn't do the research on that. I know that you can waive it. In terms of how long he would remain in, the guidance that I've been getting has been for a five, plan on doing one. And for a ten, plan on doing two.

THE COURT: So—

DEFENSE COUNSEL: But that is widely varied between people. I've had people go on tens and get out in four months. I've had people go on tens and discharge it at four and a half years.

THE COURT: Okay. I—I think there's credit for time served. I don't think that time served in jail or treatment, which sometimes counts, counts as earned time or good time.

*Bowen*, 2022 WL 16985663, at *1–2 (alterations in original). The sentencing judge proceeded to revoke Bowen's deferred judgment and sentence him to prison. *Id.* at *2.

The state in *Bowen* argued that the fixed minimum term for the crime of conviction left the district court without a way to obstruct any decision by the board of parole or department of corrections. *Id.* The court of appeals rejected this argument, noting that the sentencing judge had other sentencing options available beyond sending Bowen to prison, including continuing probation while holding Bowen in contempt—which would have permitted incarcerating Bowen

for a determinate term, circumventing any release decision by the board of parole or department of corrections. *Id.* The prosecutor suggested to the sentencing judge during their exchange: "I—I don't think we're supposed to consider when his discharge date would be. I—I think it's just whether a prison sentence is appropriate." *Id.* at *1. After further discussions attempting to predict the defendant's parole date, the judge asked defense counsel: "[D]o you have any idea of what the turnaround time is right now?" *Id.* at *2. After some equivocation, defense counsel eventually responded, "In terms of how long he would remain in, the guidance that I've been getting has been for a five, plan on doing one. And for a ten, plan on doing two." *Id.*

The court of appeals concluded that the exchange between the sentencing judge and the lawyers, in light of the court's sentencing options, established that the judge relied on an improper sentencing factor by considering the timing of parole. *Id.* at *3. This left the court of appeals, as we said in *Remmers*, with "no way of knowing what sentence would have been pronounced here without consideration of the parole question." 259 N.W.2d at 785. Unlike the majority, I conclude that the *Bowen* court's analysis lines up with our precedents.

The facts of *Bowen* are readily distinguishable from this case, in which the district court merely mentioned parole in a discussion about how Goble would need to decide for himself whether he would take action to turn his life around. The majority's criticism of *Bowen* notwithstanding, I respectfully concur in the majority's conclusion and the rest of its analysis to affirm the sentence in this case.

**MAY, Justice (concurring specially).**

I appreciate the majority's thoughtful opinion as well as Justice McDermott's thoughtful special concurrence. Like Justice McDermott, I join the majority's decision to affirm the court of appeals and the district court. I write separately to raise five concerns about *State v. Remmers*, its rule, its progeny, and our approach to them. 259 N.W.2d 779 (Iowa 1977) (en banc). In particular:

1. I question whether *Remmers* was correctly decided.

2. I question the validity of the *Remmers* rule, that is, the rule that it is improper for sentencing judges to consider when or how the parole board might exercise its authority (although, as will be discussed, the precise boundaries of the *Remmers* rule are not especially clear).

3. I question whether the *Remmers* rule is compatible with the modern statutory sentencing scheme, which often requires the sentencing judge to decide whether or when a defendant will be eligible for parole. *See, e.g.,* Iowa Code § 901.11 (2021); *id.* § 902.12.

4. I worry that the *Remmers* rule breeds confusion, including confusion in the case before us.

5. I worry that the *Remmers* rule is hard to square with the realities of sentencing in the district court.

In light of these concerns, I respectfully suggest that we should overrule *Remmers* and its progeny at the earliest appropriate opportunity.

1. *Was Remmers Correctly Decided?* I start with *Remmers* itself. In *Remmers*, the district court sentenced a defendant who had been convicted of second-degree murder. 259 N.W.2d at 780. The governing statute gave the district court discretion to set a maximum prison term between ten years and life imprisonment. *Id.* at 786 (LeGrand, J., dissenting) (citing Iowa Code § 690.3

(1975)). The district court chose a maximum sentence of seventy years. *Id.* at 781 (majority opinion). The district court gave several reasons for this choice. *Id.* at 781–82. Among other things, the district court noted that the parole board often released defendants after short periods of incarceration. *Id.* The district court *hoped*, though, that setting a long maximum sentence would result in the defendant remaining incarcerated for a long period of time before being released by the parole board. *Id.* at 782. A long period of incarceration, the court hoped, would provide sufficient time for the defendant's "maturation and 'burn-out' of his aggressiveness." *Id.* In other words, the court hoped that a long period of incarceration would sufficiently rehabilitate the defendant so that he could be released without "present[ing] a threat to society." *Id.*

In a 5–4 decision, our court vacated the sentence. *Id.* at 785–86. We concluded that the district court had impermissibly attempted to "circumvent" the parole board's exclusive authority to select the date of the defendant's release and, indeed, had "sought to . . . prevent" the parole board from making that decision "at the proper time" in the future. *Id.* at 785.

I respectfully submit that these conclusions were incorrect. The district court in *Remmers* did nothing that limited the parole board's power, discretion, or authority in any way. *See id.* at 782. Under the governing statutes, the district court was authorized to establish the defendant's maximum sentence, a term that the defendant could serve if parole did not occur. *See id.*; Iowa Code § 690.3 (1975). And that is all that the district court did. *Remmers*, 259 N.W.2d at 782. The district court did not order a mandatory minimum sentence. *Id.* Nor did the district court order any other limitation on whether or when the defendant could be paroled. *Id.* Indeed, the district court had no authority to limit the parole board's power—with one exception: If the court had ordered a life sentence, the court would have wholly precluded the possibility of parole. *See* Iowa Code §

247.5. But the court did not order a life sentence. *Remmers*, 259 N.W.2d at 781–82. As a result, the power to grant or deny parole remained wholly in the parole board. *See* Iowa Code § 247.5 (describing the power of the board of parole). And that power appears to have been limitless. *See id.* Indeed, the *Remmers* majority verified that the parole board's power was limitless—that the parole board could release the defendant on the very same "day he entered the prison." 259 N.W.2d at 783. And so, like the dissenters in *Remmers*, I see nothing improper in the district court's consideration of how the parole board might exercise its limitless power. *See id.* at 786 (LeGrand, J., dissenting).

2. *Is the* Remmers *Rule Valid?* I turn now to the general rule that has been distilled from *Remmers*, that is, the rule that it is impermissible for sentencing courts to consider the likely timing of parole (although, as mentioned, formulations of the rule vary). *See, e.g.*, *Bomgaars v. State*, 967 N.W.2d 41, 55 (Iowa 2021) (citing *Remmers* for the proposition that sentencing courts may not "consider[] the Board's parole practices"); *State v. Thomas*, 520 N.W.2d 311, 314 (Iowa Ct. App. 1994) (holding that "the prospect of early release under the parole system" was "an improper sentencing consideration").

I question whether the *Remmers* rule is valid. Sentencing is wholly a creature of statute. Our statutes require the sentencing judge to choose a sentence that will "provide maximum opportunity for the rehabilitation of the defendant" as well as "protection of the community from further offenses by the defendant and others." Iowa Code § 901.5 (2021). In making that choice, the judge is expected to consider a "host of factors . . . including the nature of the offense, the attending circumstances, the age, character and propensity of the offender, and the chances of reform." *State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002). It is wholly natural and proper for that "host of factors" to include some estimate—however tentative—of how long a defendant might be

incarcerated prior to parole release. *See id.* Indeed, a defendant's likely period of incarceration is directly relevant to core sentencing questions like, "How would a prison sentence protect the community?" and, "How would a prison sentence impact the defendant's rehabilitation?" To the extent that the *Remmers* rule prohibits considerations like these, the rule imposes artificial and improper restraints on the sentencing process.

It is true, of course, that our law prohibits the sentencing judge from considering some factors. *See, e.g., State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983). But those impermissible factors generally involve matters whose consideration would be *unfair to the defendant. See id.* For instance, because it would be unfair to penalize defendants for exercising the right to a jury trial, we usually prohibit sentencing judges from "taking into account" a defendant's refusal to plead guilty. *State v. Nichols*, 247 N.W.2d 249, 254–56 (Iowa 1976). But the *Remmers* rule seems to be based more on concern for *the parole board's authority* than on worries about fairness. *See Remmers*, 259 N.W.2d at 785 (majority opinion). In any event, I see nothing unfair about allowing a sentencing judge to consider how long a defendant will likely spend in prison before being released. Indeed, as I will discuss more below, it could be unfair to a defendant if the judge *doesn't* consider the likely timing of parole release. And yet that is what the *Remmers* rule seems to require.

3. *The* Remmers *Rule and the Modern Sentencing Scheme.* I also worry about whether the *Remmers* rule makes sense given the many situations in which the district court's choices can *properly* limit the parole board's power. *See, e.g.,* Iowa Code § 901.11. The court can make those choices because the legislature has vested the court with *clear statutory authority* to limit the parole board's power. Here are some examples:

- In several important categories of felony cases (e.g., robbery in the first degree), the sentencing court is *required* to select a mandatory minimum term of incarceration. *See id.* § 901.11; *id.* § 902.12. Any choice that the court makes will directly limit the parole board's power by postponing the defendant's eligibility for parole. *See id.* § 901.11; *id.* § 902.12. *See generally State v. Martin*, 2 N.W.3d 271, 273–76 (Iowa 2024) (discussing the sentencing process under section 901.11).

- In some felony drug cases, the court has discretion to decide *whether* to impose a mandatory minimum sentence. *See* Iowa Code § 901.10. In other words, the court must decide whether or not to limit the parole board's power. *See id.*; *see also State v. Thomas*, 547 N.W.2d 223, 225 (Iowa 1996) (per curiam) (discussing Iowa Code section 901.10).

- In aggravated misdemeanor cases, the court generally has two options when selecting a term of confinement: (1) the court may impose an indeterminate term in prison, and thereby *empower* the parole board to immediately release the defendant; or (2) the court may impose a determinate term in jail, and thereby *preclude t*he parole board from taking any action. *See* Iowa Code § 903.1(2). *See generally State v. Nicoletto*, 862 N.W.2d 621, 624–25 (Iowa 2015) (discussing possible sentences for aggravated misdemeanors).

- In many felony cases, the court has two main options: (1) the court may send the defendant to prison, where the parole board will usually have immediate power to act; or (2) the court may order a period of probation, during which the parole board will have no power to act. *See* Iowa Code § 907.3. Indeed, in the case before us now, the district court had to choose between probation and prison. The district court chose prison— in part because the court expected the parole board to release Goble

quickly. But if the court had chosen probation instead, then the parole board would have no power to act. *See id.* § 907.8(2)(*b*) ("Jurisdiction over [persons on probation] shall remain with the sentencing court."); *State v. Wade*, 757 N.W.2d 618, 628 (Iowa 2008) (describing the difference between probation and parole).

- Likewise, if a defendant violates probation, the court often has the choice to either (1) revoke probation and send the defendant to prison—which, again, would usually empower the parole board to act immediately; or (2) keep the defendant on probation—which, again, would preclude action by the parole board. *See id.* § 908.11(4); *State v. Covel*, 925 N.W.2d 183, 187–88 (Iowa 2019) (discussing the analysis "for revocation decisions").

As these examples show, our sentencing judges are regularly *required* to make choices that directly impact—and sometimes eliminate—the parole board's power to act. It is natural and appropriate, then, for our sentencing judges to consider how the parole board exercises its power. It is also natural and appropriate for the sentencing judge to sometimes choose options that limit or eliminate the parole board's power *because* the judge believes that parole release would frustrate legitimate sentencing goals, including the statutorily mandated goals of encouraging rehabilitation and protecting the community. *See* Iowa Code § 901.5. To the extent that the *Remmers* rule prohibits those kinds of sentencing approaches, it is contrary to the legislature's statutory scheme. *See id.*; *Remmers* 259 N.W.2d at 785. It places artificial, improper limitations on the discretion that has been vested in the sentencing court by our legislature. *See* Iowa Code § 901.5. And, as mentioned, those limitations can be prejudicial to the rights of defendants. For instance, in the case before us, Goble argued that probation was the best choice because—if he were sent to prison—the parole board would let

him out so quickly that he wouldn't receive drug treatment. Here's what Goble's counsel said:

> [B]eing on probation will give [Goble] a chance to work and get treatment, [but] more than likely, if he goes to prison, he'll never even see treatment. **He won't be in there long enough** [to make it through the lengthy] . . . wait list **for treatment**.

(Emphasis added.)

This is not an uncommon argument for defendants to make. And yet, one could argue that the *Remmers* rule prohibits consideration of this argument. After all, if the *Remmers* rule prohibits sentencing judges from considering the "prospect of early release under the parole system," doesn't the *Remmers* rule prohibit sentencing judges from considering whether "the prospect of early [parole] release" weighs in favor of granting probation? *Thomas*, 520 N.W.2d at 314. I think, though, that defense lawyers would be pretty confused if a judge raised that concern.

4. Remmers *Leads to Confusion.* The *Remmers* rule can be confusing in other ways, too. Consider the varied—and sometimes contradictory—statements that our courts have made about the rule. In the case before us now, the court of appeals said that "[s]entencing courts are not prohibited from referring to the possible effects of parole practices on the time that a defendant will actually serve." (Quoting *State v. Jason*, No. 14–1162, 2015 WL 6510334, at *12 (Iowa Ct. App. Oct. 28, 2015) (per curiam).) That same statement appears in at least three other court of appeals opinions. *State v. Oliver*, No. 22–0905, 2023 WL 7014089, at *2 (Iowa Ct. App. Oct. 25, 2023); *Jason*, 2015 WL 6510334, at *12; *State v. Clark*, No. 11–0240, 2011 WL 3480967, at *6 (Iowa Ct. App. Aug. 10, 2011). In *State v. Bowen*, though, the court of appeals said that "[c]onsideration of the timing of parole is an improper sentencing factor." No. 22–0278, 2022 WL 16985663, at *2 (Iowa Ct. App. Nov. 17, 2022). Likewise, we have sometimes said

that sentencing judges must not "consider[] the Board's parole practices." *Bomgaars*, 967 N.W.2d at 55. Other times, we have suggested that the prohibition might extend only to "considering *the effect* a sentence will have on a defendant's parole date." *State v. Bentley*, 757 N.W.2d 257, 266 (Iowa 2008) (emphasis added). And other times, we have suggested that the prohibition extends only to certain *purposes* for choosing a sentence, e.g., the "use of consecutive sentences *to thwart* a perceived risk of early parole." *State v. Hulbert*, 481 N.W.2d 329, 335 (Iowa 1992) (emphasis added).

These variations in wording may seem too subtle to worry about. But consider the sentencing judge. The sentencing judge must explain the reasons for the sentence. *See State v. Thacker*, 862 N.W.2d 402, 405–07 (Iowa 2015). And that explanation can only come through words. But if the judge uses words that suggest reliance on an improper consideration, then the judge's sentence will be vacated, and the sentencing process will have to be repeated. *See, e.g., Nichols*, 247 N.W.2d at 256. So it is crucial for sentencing judges to have a clear understanding of what words they can say and what words they cannot. Yet, as these examples show, it is not always clear what the *Remmers* rule prohibits and what it permits. That lack of clarity can yield confusion for the bench and bar.

Indeed, I worry that the *Remmers* rule is causing confusion in the case before us now. The majority suggests that it was acceptable for the sentencing court to consider parole timing because the court's purpose was to encourage "rehabilitation and protection of the community," a phrase that appears several times in the majority opinion. Yet those are the required goals for every sentence entered in an Iowa court. Iowa Code § 901.5. Indeed, those two goals— rehabilitation of the defendant and protection of the community—were reasons that the district court gave in *Remmers*. 259 N.W.2d at 782, 785. Even so, we

vacated the sentence in *Remmers*. *Id.* at 785. Does that mean we must vacate Goble's prison sentence as well?

The majority also suggests that it is proper for the sentencing court to consider parole prospects *unless* those considerations lead the court to impose a longer sentence. *But cf. Thomas*, 520 N.W.2d at 314 (holding that the district court's consideration of parole prospects was improper even though the court ordered jail instead of prison). But consider the facts before us. The district court considered Goble's parole prospects when choosing between probation and prison. And then the court decided on *prison*. Almost by definition, though, *prison* involves longer imprisonment than probation, which (of course) is an *alternative* to imprisonment. Plus the court cited Goble's parole prospects when explaining the court's reasons for the prison sentence. I am not sure how this differs from *Remmers*, where we vacated a sentence because the district court cited parole prospects when explaining its reasons for a longer sentence. 259 N.W.2d at 785–86.

The majority suggests that *Remmers* is distinguishable because "[n]othing about Goble's sentence circumvents the parole board's discretion" because "Goble was, and is, immediately eligible for parole." As explained, though, the same was true in *Remmers*. 259 N.W.2d at 783. Indeed, the *Remmers* majority verified that the defendant "would be eligible for parole the day he entered the prison." *Id.* This, again, makes it hard to distinguish between Goble's situation, where we are affirming the sentence, and the *Remmers* situation, where we vacated the sentence. *See id.*

The majority also suggests that *Remmers* only prohibits the sentencing court from "formulat[ing] a particular sentence to avoid an early release under the parole system." As discussed, though, there are many occasions in which a sentencing court may *properly* formulate a sentence to avoid early parole release.

For instance, the sentencing court here might have properly accepted Goble's suggestion that probation was better than prison *because* a prison sentence would lead to early parole release.

Along similar lines, the majority suggests that *Remmers* only prohibits the sentencing court from improperly " 'circumvent[ing]' the parole system by selecting a sentence that would deprive the parole board of discretion it would otherwise have." This assumes that district courts *can* impose *improper* limits on the parole board's discretion. That is an incorrect assumption. So long as the district court enters a legal sentence, any limits that the court might impose on the parole board's discretion—such as mandatory minimums or choosing jail rather than prison—are *wholly proper*. They are wholly proper because the legislature has authorized them. *See* Iowa Code § 901.5. *But see Thomas*, 520 N.W.2d at 314 (holding that the district court erred by choosing jail over prison "because of the prospect of early release under the parole system").

5. Remmers *and the Realities of Sentencing.* In addition to its other shortcomings, the *Remmers* rule does not reflect the realities of sentencing in the district court. To be clear, I do not doubt that our judges make every effort to comply with the *Remmers* rule by filtering parole prospects out of their sentencing calculations. As the *Remmers* dissent noted, though, our judges are well aware that their sentences "are seldom, if ever, served to their completion." 259 N.W.2d at 786 (LeGrand, J., dissenting). Indeed, every time a judge sentences a defendant for a felony or aggravated misdemeanor, the judge must "publicly announce" that "the defendant may be eligible for parole before the sentence is discharged." Iowa Code § 901.5(9)(*b*); *see also id.* § 901.9 (requiring the judge to "furnish the board of parole with a full statement of . . . recommendations relating to release or parole").

Plus the department of corrections provides sentencing judges with email notifications when defendants are actually released from prison. This flow of notifications provides judges with frequent insights into the parole board's practices.

It is also interesting that, in *Remmers*, presentence investigators provided the district court with statistical data showing actual parole dates for offenders who had been convicted of the same offense (second-degree murder) as the *Remmers* defendant. 259 N.W.2d at 781 (majority opinion). I imagine that even better statistical assistance could be available in 2024 than in 1976, when the *Remmers* defendant was sentenced. *See id.* at 780–81.

In any event, I see little benefit in prohibiting judges from using their understandings of the parole system to help them craft better sentences. This prohibition seems especially odd because prosecutors and defense lawyers (and experienced defendants) are well aware of the parole process and, indeed, they sometimes base decisions on their expectations about parole board behavior. *See, e.g., Sothman v. State*, 967 N.W.2d 512, 517–18 (Iowa 2021) (quoting a letter from a defense attorney in which the attorney advised a client that—although child endangerment resulting in death "is punishable by a penalty of up to 50 years of incarceration in prison"—"a Legislative Services Study" showed that "typical individuals . . . serve on average 4.6 years on this type of sentence" (emphasis omitted)).

6. *Conclusion.* Our sentencing judges bear "an awesome and lonely responsibility." *Pappas*, 337 N.W.2d at 493. Their work is crucial to the proper functioning of our criminal justice system. We should do what we can to support their work. At least, we should try to relieve them of unnecessary, unnatural, and improper burdens. The *Remmers* prohibition is an unnecessary, unnatural,

and improper burden on our sentencing judges. We should remove that burden at the earliest appropriate opportunity.

Christensen, C.J., joins this special concurrence.