**STATE of Iowa, Appellee,**

v.

**William PAPPAS, Appellant.**

No. 67627.

Supreme Court of Iowa.

Aug. 17, 1983.

He appealed after he was given concurrent five year (for perjury) and ten year (for theft) sentences. The court of appeals found that the trial court abused its discretion by refusing probation. On further review we vacate the decision of the court of appeals and reinstate the judgment of the trial court.

At the time of his plea, defendant was sixty-one years old and had practiced law since 1948. He was a prominent trial lawyer with demonstrated ability to earn a moderately comfortable income. He nevertheless became heavily indebted, a circumstance he attributes to separate professional partnerships he described as "disastrous." Eventually he faced a bank foreclosure on his residence.

Defendant managed to satisfy the bank obligation but in the process embezzled and made false reports concerning between $5,000 and $10,000 from funds he held as a conservator. He also took over $33,000 from other funds entrusted to him. Defendant repaid all the money, most of it before the shortages were discovered.

After the two charges were filed defendant and the county attorney reached a plea bargain under which defendant was to plead guilty to both perjury and theft. No additional charges were to be filed although the facts might have supported at least two others. The county attorney agreed to recommend suspended sentences, and did so.

Defendant entered his guilty pleas under the agreement. A presentence investigation report was furnished which strongly recommended that defendant receive a suspended sentence and be placed on probation with directions to furnish 300 hours of community service. A judge from a neighboring judicial election subdistrict was specially assigned to preside at defendant's sentencing because the local judges thought the sentencing should be imposed by a judge who did not regularly sit in the county.

At the time set for sentencing the trial court rejected the plea agreement. He accorded the defendant the opportunity to withdraw his guilty plea, but defendant

F.H. Becker of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Richard L. Cleland, Asst. Atty. Gen., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, LARSON, and WOLLE, JJ.

HARRIS, Justice.

Defendant, a Mason City attorney, entered guilty pleas to perjury (Iowa Code § 720.2 (1981)) and first degree theft (Iowa Code §§ 714.1(2), 714.2(1) and 714.3 (1981)).

elected to proceed with sentencing. Defendant then called a number of witnesses who testified in support of the recommendation in the presentence report. The trial court declined the recommendation and sentenced defendant to the concurrent sentences of five and ten years, explaining the decision this way:

By law I'm obligated to state my reasons and I'm going to do that. In all fairness, I wish I could agree with the presentence report. If I could, I would. I would say that 95 percent of the time I'm very comfortable with [recommendations for suspended sentences]. .... [I]n your case ... I cannot give you one. I think this does require a prison sentence and I do impose a prison sentence. They're to run concurrently.

There's no question in my mind that you're not a threat to society anymore. Whatever has happened has been brought out. There's no question you have and will pay a big economic price, because you're losing your main source of livelihood. Why do I come to this? [I would say two things. First, a court functions on the premise] that we tell things the way they are. The courts rely on it. We make decisions of vast importance to people in their lives. Perjury strikes at a court as hard as anything does. I do not think that society or the public generally thinks that a court should or could tolerate perjury. I know of very few cases where a court has given a suspended sentence on perjury that strikes at the very foundation of our existence.

The other thing that we [of the legal profession hold ourselves out as is having] integrity. We ... handle people's property and funds and [handle] them rightly. Those are the two strongest things that, [in] the eyes of the public, ... lawyers and courts stand for, and you've violated them both. I have never, in practice or as a judge, met a person who embezzled who intended to keep the money. He borrowed the funds. He was under pressure or something. The presentence report would indicate that you are more or less in the 50 to $60,000 a year category.

I hear every week upon sentencing people that they're out of work, they have no assets, they cannot keep the bread on the table, and they are being pushed. The county attorney frequently says we have to teach them a lesson by sending them away and I don't see how I can disagree. If I give you a suspended sentence, society would construe that as a matter of the courts or the bar taking care of their own. There is this other aspect which has been repeatedly remarked on which I think is a factor. Is there a message to others? If I say (and I do) that I don't think you're a threat to anyone, is there a message to others? I think there is and I think that message has to go particularly to people in our profession that perjury cannot be tolerated. This is a continuing problem in the State of Iowa. We have got the client security fund [in an attempt] to resolve this problem. If you had been hit by a car at the wrong time, I take it this might have been up to $33,000 instead of $5,000 or at least a sizeable sum and you would have meant to pay back. I have no doubt about that. But we have to give a message to the lawyers, and to the public: ... [(1) You will] tell the truth in court and, (2) [lawyers] will act *for* client's funds and will not let their personal problems intrude on their duties. And society can rely on that [and on the fact that lawyers who do otherwise] will be punished.

I have a right to reconsider this sentence..... [B]ut I would have to be honest with you and tell you I doubt if the reasons [for which] I have sentenced you would justify the use of a "shock" sentence .... I would expect that the prison authorities will have to see and evaluate you and release you.... [I]n light of your record, your age, your condition, I doubt if it would be long incarceration and, if the channels other than court channels conclude that you should be released, I'll not be uncomfortable..... In light of the economic loss, I don't think an additional fine is appropriate. I think

the penalty of imprisonment is the ultimate penalty in this case.

■ I. The sole question on appeal is whether the trial court abused its discretion in imposing sentence. An abuse will not be found "unless the defendant shows 'that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Morrison,* 323 N.W.2d 254, 256 (Iowa 1982) (quoting *State v. Buck,* 275 N.W.2d 194, 195 (Iowa 1979)). The two sentences, for five and ten years, were within statutory limits. Iowa Code § 902.9 (1981).

Code § 901.5 spells out what a criminal sentence should try to accomplish. It provides:

After receiving and examining all pertinent information, including the presentence investigation report, if any, the court shall consider the following sentencing options. The court shall determine which of them is authorized by law for the offense, and of the authorized sentences, which of them or which combination of them, in the discretion of the court, will provide maximum opportunity for rehabilitation of the defendant, and for the protection of the community from further offenses by the defendant and others.

Under section 902.9 the trial court had no discretion to sentence defendant for less than the five and ten year terms; but it did have authority under section 907.3 to defer judgment, defer sentence, or suspend sentence. Section 907.5 lists a number of factors to be considered by a trial court in determining whether to suspend sentence:

Before deferring judgment, deferring sentence, or suspending sentence, the court first shall determine which option, if available, will provide maximum opportunity for rehabilitation of the defendant and protection of the community from further offenses by the defendant and others. In making this determination the court shall consider the age of the defendant; the defendant's prior record of convictions and prior record of deferments of judgment if any; the defendant's employment circumstances; the defendant's family circumstances; the nature of the offense committed; and such other factors as are appropriate. The court shall file a specific written statement of its reasons for the facts supporting its decision to defer judgment, to defer sentence, or to suspend sentence, and its decision on the length of probation.

In selecting sentence under the Iowa corrections code, chapters 901 through 909, the judge is given no voice in the length or place of incarceration for felons. The length of incarceration for each felony is set by statute and, under chapter 906, the board of parole is solely responsible for parole decisions. The only discretion to be exercised by the judge is the "in or out" choice under the probation provisions of chapter 907.[1]

A trial court nevertheless holds an awesome and lonely responsibility in sentencing. It is given and must exercise discretion in that narrow question of crucial importance: whether to defer or suspend sentence and grant probation under chapter 907. *State v. Hildebrand,* 280 N.W.2d 393, 396 (Iowa 1979). In *State v. Jackson,* 204 N.W.2d 915, 917 (Iowa 1973) we said:

[I]n the end no judge can abdicate his individual responsibility to pass sentence in each case according to his lights, within the statutory limits. Each judge must grapple with the facts and circumstances in the case before him and arrive at the sentence he regards as right. The sentencing function of judges is an arduous and a lonely one, but it is part of judging.

In *Jackson, id.,* we also quoted with approval the following definition of discretion:

"Discretion," when applied to public functionaries has been defined to be "a power or right, conferred upon them by law, of

---

1. That choice may be extended for 90 days under § 902.4 for reconsideration of a felon's sentence.

acting officially in certain circumstances according to the dictates of their own consciences, uncontrolled by the judgment or conscience of others."

The trial court here unquestionably exercised discretion. The question is whether discretion was abused. We have said:

When discretion has been accorded and exercised it is subject only to a limited appellate review. We affirm unless discretion has been abused.

" .... [T]he decisions of the trial court are cloaked with 'a strong presumption in [their] favor,' and '[u]ntil the contrary appears, the presumption is that the discretion of the [trial] court was rightfully exercised.' .... [T]o overcome this presumption of regularity requires an affirmative showing of abuse and the burden of so showing rests upon the party complaining.

"This burden is heavy, indeed, for it can only be sustained by showing abuse *and* prejudice. In the words of a leading treatise on discretion: ' .... the action complained of must have been unreasonable in the light of attendant circumstances—the discretion must have been exercised for *reasons clearly untenable* or to an extent clearly *unreasonable* ....' "

*State v. Gartin,* 271 N.W.2d 902, 910 (Iowa 1978) (emphasis in original).

■ Through the years many appeals have challenged our strong commitment to the foregoing scope of review. Our majority holdings have nevertheless been consistent: whatever Iowa statutes leave to the courts in matters of sentencing should be the responsibility of the sentencing judge. *State v. Morrison,* 323 N.W.2d at 256–57 ("probation may be refused when it would unduly depreciate the seriousness of the crime"); *State v. Grgurich,* 253 N.W.2d 605, 606 (Iowa 1977) ("so long as the sentence is within the statutory maximum we will not reverse absent an abuse of discretion"). An abuse of discretion is rarely found when sentence is imposed within the statutory maximum unless (1) the trial court fails to exercise its discretion, *e.g., State v. Dvorsky,* 322 N.W.2d 62, 67 (Iowa 1982) or (2)

the trial court considers inappropriate matters in determining what sentence to impose, *e.g., State v. Messer,* 306 N.W.2d 731, 732–33 (Iowa 1981).

■ II. The court of appeals found the trial court did in fact consider an inappropriate matter: defendant's status as a lawyer. We quote from its opinion:

The [trial] court, in relating its reasons for sentencing Pappas to a lengthy prison term said: "if I give you a suspended sentence, society will construe that as a matter of the courts or the bar taking care of their own." That is, in addition to the general deterrent effect which the court hoped would result from sentencing Pappas to a lengthy prison term, a major factor in the sentence was the [trial] court's belief that anything less would bring the courts and the legal profession into disrepute, a belief founded upon no evidence in the record.

After referring to the due process and equal protection clauses of the fifth and fourteenth amendments of the United States Constitution, and to the principle that all persons stand equal before the law, the court of appeals went on to criticize consideration of defendant's status as a lawyer, stating "It is impossible for us to suppose that our courts may wreak vengeance upon some defendant merely because the court presumes that public outcry may demand it." Focusing specifically on the trial court's isolated remark, last quoted, the court of appeals went on to say "It is completely inappropriate and unacceptable to victimize a particular person because he happens to be a lawyer .... "

Our reading of the trial court's comment, taken in context, leaves us a great deal less sure than the court of appeals that the trial court was unduly influenced by the fact that defendant was a lawyer. We think the point made by the sentencing judge was that defendant's status as a lawyer in this "white collar" crime could not be ignored. He was not being sentenced as a lawyer, however, but as a person guilty of theft and perjury who happened to be a lawyer.

We are unable to understand how, in considering the nature of the crimes, defendant's professional status could be ignored. It was his professional status, and especially the fiduciary nature of it, that put him in close proximity with the funds he embezzled. His breach of professional trust was at the very heart of his crimes. It would have been inappropriate for the trial court to have failed to consider it. In *State v. Morrison,* 323 N.W.2d at 256–57 we pointed out:

> In this case the trial court was required to consider that defendant was a judge at the time of the offense. Defendant's status was integral to the offense and its gravity. The offense was more serious because defendant was a judge than it would otherwise have been. [Authority]. The seriousness of the offense is an important sentencing consideration. Probation may be refused when it would unduly depreciate the seriousness of the crime. [Authority].

III. Although the court of appeals thought otherwise we think our *Morrison* opinion is binding authority here. The court of appeals thought the case could be distinguished because Morrison's offense (attempting to extort services of a criminal defendant) was integral to his crime whereas Pappas' status as a lawyer was not integral to his crimes. Its opinion stated:

> If Morrison had not been *a judge* he could not have committed the crime of attempting to extort services from a criminal defendant ....
>
> In the [present] case, however, Pappas being a lawyer was *not* integral to the offenses which he committed. One need not be a lawyer to commit the offenses of embezzlement or perjury.

We see no such distinction between the offense by the judge in *Morrison* and the offense by the lawyer in this case. Both used their official status as a means to accomplish illegal objectives. Both cases involved outrageous breaches of professional trust. It should be unnecessary to point out that the stern demands of honor and integrity fall alike on a lawyer and a judge.

Cynics might charge that this view is visionary, a product of excessive pride in the legal profession. Our pride in the profession, notwithstanding the pain resulting from rare cases such as this, is indeed great; but the standards which exact so much from lawyers actually proceed in the public interest. With every trust goes a corresponding responsibility to guard and protect it. Society needs to have lawyers tell the truth. It is important to the public that lawyers hold separately and in trust all funds belonging to a client. A lawyer's obligation to do so must in no way be compromised by a lawyer's personal problems. The public can count on the fact that lawyers will be punished if they lie or mishandle a client's funds. These were the specific reasons given by the sentencing judge in explaining his refusal to grant probation.

We conclude, under our well-established standards for review, that the trial court did not abuse its discretion.

THE DECISION OF THE COURT OF APPEALS IS VACATED; THE JUDGMENT OF THE TRIAL COURT IS AFFIRMED.

All Justices concur except LARSON, J., who concurs in result.