# IN THE COURT OF APPEALS OF IOWA

No. 20-0486
Filed February 17, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRANDON DINOVO,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Sarah Crane, Judge.

Brandon Dinovo appeals the sentences imposed for multiple crimes, asserting the district court abused its discretion in not granting him deferred judgments. **AFFIRMED.**

Joey T. Hoover of Hoover Law Firm P.L.L.C., Epworth, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

Without being invited, Brandon Dinovo drove from Council Bluffs to Des Moines in the late evening to early morning hours for the purpose of having personal contact with his ex-girlfriend, P.G., at her residence. As Dinovo knocked on P.G.'s door around 12:44 a.m., P.G. refused to open the door, told Dinovo to leave, and called police. P.G.'s boyfriend, K.C., was in P.G.'s apartment at the time. Police officers arrived to find Dinovo in the hallway of P.G.'s apartment building. At P.G.'s request, officers told Dinovo to leave and not come back. Dinovo left, as did the officers.

After leaving, Dinovo sent a social media message to P.G. The message threatened that, if P.G. did not let him in and talk to him, he would send private photos of P.G. to people she knew and her workplace. P.G. had not consented to having the private photos taken of her or to allowing Dinovo to send them to others. Dinovo sent P.G. one such photo, confirming that he had at least one.

Less than an hour after Dinovo was ordered away from the apartment building by law enforcement, P.G. called the police again because Dinovo had returned, found a way into the secured apartment building, and was once again knocking on P.G.'s door. By the time law enforcement arrived in response to the call, Dinovo had left, but P.G. had observed Dinovo circling the apartment building in his vehicle while P.G. waited for the police to arrive. An officer talked to P.G. and K.C. in the lobby area of the apartment building. Unable to find Dinovo, the officer left again.

As P.G. and K.C. got off the elevator on their way back to P.G.'s unit after speaking with the officer, they encountered Dinovo in the hallway. Dinovo stated

he wanted to talk to P.G. privately in her apartment. K.C. stood between P.G. and Dinovo in order to give P.G. a chance to safely return to her apartment. As P.G. backed toward her apartment, she dialed 9-1-1. As P.G. was trying to unlock and enter the apartment, Dinovo rushed K.C., who tried to stop Dinovo's advance toward P.G.'s apartment by holding out his hand against Dinovo's chest. Dinovo kept driving toward K.C. and proceeded to tackle him through the open doorway into P.G.'s apartment. Once inside the apartment, K.C. tried to push Dinovo out of the apartment, but Dinovo began repeatedly punching K.C. in the face. K.C. suffered significant injuries as a result. Police eventually arrived and arrested Dinovo at the scene.

As a result of this episode, Dinovo eventually entered *Alford* pleas[1] to charges of burglary in the second degree, willful injury causing bodily injury, stalking, harassment in the first degree, and extortion. At sentencing, Dinovo requested deferred judgments on all charges. The State recommended imposition of judgment with suspension of the sentences. The district court denied Dinovo's request for deferred judgments, imposed prison sentences on all charges, and suspended the prison sentences. Dinovo appeals, claiming the district court abused its discretion in denying his request for deferred judgments.

In making his challenge, Dinovo makes no claim that the sentences imposed were outside statutory limits. When the sentence imposed is within

---

[1] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

statutory limits, we review sentencing decisions for an abuse of discretion. *State v. Gordon*, 921 N.W.2d 19, 24 (Iowa 2018). "An abuse of discretion is rarely found when sentence is imposed within the statutory maximum unless (1) the trial court fails to exercise its discretion, or (2) the trial court considers inappropriate matters in determining what sentence to impose." *State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983) (citations omitted).

Here, Dinovo claims the district court abused its discretion by failing to exercise its discretion because the court only considered the nature of the crime. In support of his argument, Dinovo relies on *State v. Dvorsky*, 322 N.W.2d 62, 67 (Iowa 1982), which held that the sentencing court failed to exercise discretion when the court relied on the nature of the offense alone in determining a discretionary sentence. Dinovo's claim is not supported by the record. In denying Dinovo's request for a deferred judgment, the district court stated:

> I appreciate the victim impact statements and also the statements of Mr. Dinovo.
>
> I am not going to grant the deferred judgment. These are serious crimes, and they have placed people in real fear. And it's not just a situation of wrong place, wrong time, because there were a series of decisions made to put yourself in that position, to drive from Council Bluffs to Des Moines, the choice not to leave when police essentially allowed you that opportunity to leave.
>
> I do appreciate that you're taking some steps to better yourself. And I'm not going to hold the system against you. I don't hold it against you, delaying the process. I'm familiar with the process, and I'm not holding any of that against you.
>
> I am going to go along with the parties' agreement of probation. I think a period of five years is appropriate. And the courses that you are agreeing to take should provide some benefit to you. And the supervision can help you make the changes that you need to make in your life.
>
> I am going to run all of the counts consecutive, except the harassment and extortion are going to run concurrently. So it will be for a total period not to exceed twenty-two years instead of twenty-four years.

My decision, based on the consecutive and concurrent—the basis for my decision on consecutive and concurrent is, I've taken into account the plea agreement of the parties. I've also taken into account the serious nature of the offenses and to the extent I think that those—some of those events are separate and not separate.

Also, for all of my decisions today, I've taken into account maximum ability for rehabilitation and protection of the public.

These statements by the district court, while fairly terse and succinct, were sufficient in themselves to show the district court relied on several factors and was not only considering the nature of the offenses. *See Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 648 (Iowa 2019) ("Even a 'terse and succinct statement is sufficient . . . when the reasons for the exercise of discretion are obvious in light of the statement and the record before the court.'" (alteration in original) (quoting *State v. Thacker*, 862 N.W.2d 402, 408 (Iowa 2015))).

The sufficiency of the district court's statements is even more clear when some of the court's comments are explained. The court's statement, "[a]nd it's not just a situation of wrong place, wrong time," was a response to Dinovo's statement during his allocution that suggested he was a victim of circumstance due to "[w]rong place, wrong time, in the wrong sense of everything that's going on." The court's comments about this statement by Dinovo suggest the court was taking into account Dinovo's efforts to minimize his responsibility, which was proper for the court to do. *See State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005) (noting that a "defendant's lack of remorse is highly pertinent to evaluating his need for rehabilitation and his likelihood of reoffending," and this is true even in the context of an *Alford* plea).

Further, the court's statement about not holding the delays against Dinovo was in response to the victim impact statement given by P.G. in which she blamed

Dinovo for how long the process had taken and suggested it was an example of him trying to delay taking responsibility. The fact the district court rejected this contention by one of the victims demonstrates the district court was thoughtfully considering the facts and circumstances as they related to sentencing and was willing to disregard unwarranted negative suggestions, which supports the conclusion the district court was properly exercising its discretion.

Although we find the district court's statements during the sentencing hearing alone sufficient to negate Dinovo's claim the district court abused its discretion, the district court's proper exercise of its discretion is bolstered by the written sentencing order that followed the hearing. In the subsequent written order, in addition to the reasons stated on the record, the district court noted it also considered Dinovo's age, prior criminal record, employment circumstances, family circumstances, and the plea agreement in arriving at the sentences imposed. The reasons given in the written order issued after the sentencing hearing are properly considered in determining whether the district court properly exercised its discretion. *See State v. Johnson*, 445 N.W.2d 337, 343 (Iowa 1989) (holding the sentencing colloquy, sentencing order, and presentence investigation report together "form a sufficient basis upon which to review the exercise of the trial court's sentencing discretion"), *overruled on other grounds by State v. Hill*, 878 N.W.2d 269, 274–75 (Iowa 2016).

We find no abuse of the district court's sentencing discretion. The district court properly considered multiple factors beyond the nature of the offenses in rejecting Dinovo's request for deferred judgments.

**AFFIRMED.**