# IN THE COURT OF APPEALS OF IOWA

No. 23-1906
Filed November 13, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERICKA LYNN RANKINS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Lawrence P. McLellan, Judge.

        A defendant appeals her prison sentence for three counts of neglect of a dependent person and six counts of child endangerment. **AFFIRMED.**

        Jessica Donels of Parrish Kruidenier, L.L.P., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee State.

        Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

Following the death of her five-year-old son, Ericka Rankins pleaded guilty to six misdemeanor counts of child endangerment and three felony counts of neglect of a dependent person. For those nine offenses, the district court sentenced her to a prison term not to exceed thirty-two years. She appeals that sentence, contending that probation was a better option given her history of trauma and mental-health struggles. Because the district court did not abuse its discretion in choosing incarceration based on the "separate and serious nature of each of the offenses," we affirm the sentence.[1]

## I. Facts and Prior Proceedings

Rankins committed these crimes in 2020. We start with the most harrowing offense. On December 19, Rankins left her hotel desk job just before midnight. On her way home, she picked up pizza for her children—ages two, four, five, seven, nine, and eleven—whom she left alone while working. She gave food to the children but did not eat with them. Instead, she took pizza into her bedroom. One of the children soon alerted her that five-year-old J.R. was in the bathroom vomiting. When she checked on J.R., she found that he had also defecated in his pants. She told him to "clean it up" on his own and returned to her bedroom to rest. Later, while Rankins was sleeping, one of the children came into her bedroom, alarmed that J.R. had fallen. Rankins got up and went into the bathroom,

---

[1] We review sentencing decisions for the correction of legal error. *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024). If a sentence falls within statutory limits, we will not overturn it unless the court abused its discretion or considered inappropriate matters. *Id.* We will not find an abuse of discretion unless we can tell that the court's reasoning was "clearly untenable." *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002).

where she found J.R. in the bathtub; he was not moving or breathing. She called 911, and the dispatcher told her how to perform CPR until the paramedics arrived.[2] But the child was pronounced dead at the hospital.

The medical examiner found that J.R. had scars on his face, forehead, legs, buttocks, abdomen, and elbow—in various stages of healing. He explained that "some of the marks were consistent with blunt force injuries where [J.R.] could have been hit with a hanger or a belt. Other injuries were consistent with being burned by cigarettes."[3] A police investigation showed that the child's father lived with the family from April through November 2020. Rankins later admitted that she had not intervened when the father inflicted excessive discipline on the child.

A warranted search of Rankins's cellphone also revealed videos of three incidents in 2020 when she disciplined J.R. by forcing him to do "wall sits"— squatting against a wall with his arms outstretched for up to an hour. According to investigators, "[w]hen he cried, she hit him." And in one video—posted on Facebook—Rankins ridiculed J.R. for peeing his pants at a birthday party.

After J.R.'s death, Rankins avoided investigators. Law enforcement could not locate her for over two years.[4] Then, in February 2023, the State filed a twelve-count trial information, charging her with seven counts of aggravated-misdemeanor child endangerment, in violation of Iowa Code sections 726.6(1)(a)

---

[2] At the plea hearing, Rankins stated that she fell asleep at "probably 1:30, 2:00." She was "not for sure" how long she was asleep before she found J.R. in the bathtub. She called 911 around 6:00 in the morning.

[3] The medical examiner ruled the cause of J.R.'s death as "undetermined."

[4] Rankins was on probation at the time of the offenses and failed to keep contact with her probation officer. United States Marshals eventually located her in Minnesota.

and 726.6(8) (2020); one count of child endangerment causing bodily injury, a class "D" felony, in violation of sections 726.6(1)(a) and 726.6(7); and one count of child endangerment causing serious injury, a class "C" felony, in violation of section 726.6(1). The State also charged her with three counts of neglect of a dependent person, class "C" felonies, in violation of section 726.3.

In September 2023, Rankins reached a plea agreement with the State. She agreed to plead guilty to six aggravated misdemeanor counts of child endangerment for creating a substantial risk to the physical, mental, and emotional health of her six children on December 19 and 20. The parties agreed to jointly recommend that the sentences for those counts be run concurrently for a term not to exceed two years. Rankins also pleaded guilty to three class "C" felony counts of neglect of a dependent person for knowingly exposing J.R. to danger during incidents in April through December 2020. The State was free to recommend that those ten-year felony sentences be run consecutively for a total maximum sentence of thirty-two years.

At sentencing, the defense presented testimony from psychologist Carlo Giacomoni, who evaluated Rankins to assess how her history of trauma and depression contributed to the charges against her. Dr. Giacomoni observed that Rankins had received "similar discipline" as a child so it did not "seem as problematic" to her. He also noted that she was dealing with the stress of the children being home from school during the pandemic and was pregnant again, which added to her fatigue.

In her allocution, Rankins admitted making "some mistakes" but insisted that she had learned from her actions and asked for probation. In recommending

imprisonment, the State stressed the brutality of Rankins's conduct toward J.R: "She disparaged him. She hit him. She did everything to make his discipline over the top, embarrassing, and cruel, and she filmed it because she's so proud of it."

The district court adopted the State's recommendation, imposing a prison sentence not to exceed thirty-two years. Rankins appeals.[5]

## II. Analysis

Before imposing the sentence, the district court explained that it had weighed all the relevant information, including the presentence investigation report (which recommended incarceration) and Dr. Giacomoni's testimony (he recommended probation). The court also considered Rankins's prior convictions, her age, her family circumstances, and her mental-health history. *See* Iowa Code § 907.5(1). And the court highlighted the serious nature of the offenses. After reflecting on all those factors, the court decided that the prison sentence recommended by the State provided "the maximum opportunity for rehabilitation of Ms. Rankins and the protection of the community from further offenses by her." *See* Iowa Code § 901.5.

On appeal, Rankins acknowledges that the court considered proper factors but ventures that it weighed them "in an unreasonable or untenable manner." She contends that she "did not commit these offenses because she was a mean or malicious person." Rather, in her view, she lacked the financial and mental resources "to supervise or discipline [her children] appropriately."

---

[5] Rankins satisfied the good-cause requirement in Iowa Code section 814.6(1)(a)(3). *See State v. Damme,* 944 N.W.2d 98, 104–05 (Iowa 2020).

"[O]ur task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds." *Formaro*, 638 N.W.2d at 725. We find nothing irrational in the district court's exercise of sentencing discretion. The court could have placed greater stock in the opinions offered by Dr. Giacomoni. But it was also free to find that Rankins's pattern of neglect and cruelty called for incarceration. We give sentencing courts wide latitude in deciding among viable options. *See State v. Pappas*, 337 N.W.2d 490, 493 (Iowa 1983) (noting that trial courts hold "an awesome and lonely responsibility in sentencing"). We decline to remand for resentencing.

**AFFIRMED.**