# IN THE COURT OF APPEALS OF IOWA

No. 23-1475
Filed January 9, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**MATTHEW JAMES MEISHEID,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Washington County, Joshua P. Schier, Judge.

A defendant appeals his convictions and sentences for two counts of assault on a peace officer while displaying a dangerous weapon. **AFFIRMED**.

Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

Heard by Greer, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

"I'll shoot a firework, boom, boom, boom, boom," said Matthew Meisheid to two sheriff deputies as he pulled a holstered gun from his pants and pointed it up in the air. The deputies had come to his home after reports of fireworks being shot off from his property to tell him fireworks were prohibited in Kalona. And in the midst of swearing at them to get off his property, Meisheid escalated the encounter by pulling the gun and raising it into the air as he expressed his anger. He obeyed when a deputy told him "to put that away now," but continued to yell and swear at them to leave as the deputies backed away. A couple days later, Meisheid was arrested on two counts of assault on a peace officer while displaying a dangerous weapon in violation of Iowa Code sections 708.1(2)(c) and 708.3A(2) (2022). He was convicted on both counts after a jury trial and sentenced to two concurrent mandatory five-year sentences under Iowa Code section 902.7.

Meisheid appeals, arguing that the evidence was insufficient on two elements of the offense—that he displayed the gun "in a threatening manner" and that he did so "toward either deputy." But substantial evidence supports both elements. And we do not interpret the statutory term "display toward" to require Meisheid to "point toward" the deputies with the gun because the statute separately prohibits pointing a firearm toward another. We thus affirm the convictions.

Meisheid also argues the district court abused its discretion in finding no mitigating circumstances to reduce his mandatory minimum sentence. But the record shows that the court was aware of the potential mitigating circumstances and merely concluded they did not warrant sentencing Meisheid to less than the minimum. Seeing no abuse of discretion in its reasoning, we affirm the sentences.

## I.     Factual Background and Proceedings

In July 2022, at around 9:15 p.m., two sheriff deputies were dispatched to Meisheid's home in Kalona after receiving a report that fireworks were being shot off.   When they arrived, the deputies noticed smoke in the air.   The deputies knocked on Meisheid's side door and waited for someone to answer.   They knocked multiple times and rang the doorbell.   Meisheid eventually opened the inner door, and then slammed it back shut.

The deputies did not immediately leave.   And Meisheid then came outside and told the deputies that he was grilling and had a Doberman inside and told them, "I don't know what you're doing here, but you don't have a warrant.   So let's go.   See you."   The deputies informed him that Kalona had a no-fireworks ordinance, and he could not be shooting off fireworks.   Meisheid denied having fireworks and became more agitated with the deputies and started swearing at them: "You know what I'm tired—this is just bullshit again so get the fuck off my property without a warrant."

The deputies agreed they would leave but asked him, "if there were any fireworks just no more—you can't shoot them in Kalona.   Okay?   Deal?"   Rather than agreeing, Meisheid demanded their names and badge numbers, which they provided.   Getting angrier, Meisheid responded "I'm getting really fucking tired of you assholes coming to my house blaming me of shit."   A deputy explained that they were only there because someone reported fireworks coming from his address and "we just came to tell you you can't shoot fireworks, that's all.   I don't know why you're trying to make such a big deal about it.   We're, we're out of here."

Meisheid then pulled a holstered handgun out of the waist of his shorts, raised it above his head, and said, "I'll shoot a firework, boom, boom, boom, boom." A deputy immediately told him "to put that away now," and Meisheid then put the gun back in his waistband.

After putting the gun away, Meisheid continued to tell the deputies that they needed to get off his property and continued to yell profanities at them. The deputies backed away and left Meisheid's property. Both deputies testified that they felt "threatened" and "intimidated."

Two days later, the patrol lieutenant in the sheriff's office returned to Meisheid's residence to execute an arrest and search warrant. During the search, the lieutenant informed Meisheid that they were looking for the gun that he "brandished" two days before, and Meisheid responded that it was "right up on the shelf." Meisheid was then arrested.

Meisheid was charged with two counts of assault on a peace officer while displaying a dangerous weapon in violation of Iowa Code sections 708.1(2)(c) and 708.3A(2). After a two-day trial in June 2023, a jury found Meisheid guilty of both counts. The State sought a five-year mandatory minimum sentence for each count under Iowa Code section 902.7 for displaying a dangerous weapon in a threatening manner while participating in a forcible felony. Because Meisheid was a first-time offender, the district court had discretion to sentence him below the mandatory minimum upon a finding of mitigating circumstances. See Iowa Code § 901.10(1). But at his sentencing hearing, the court rejected his argument for such a reduced sentence. Rather, it sentenced Meisheid to prison for the mandatory minimum of five years on each count, with both sentences to be served concurrently.

Meisheid appeals his convictions and sentences.

## II. Sufficiency of Evidence

We review challenges to the sufficiency of the evidence for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). Our review is "highly deferential," and we are bound by the jury's verdict if it is supported by substantial evidence. *Id.* Evidence is substantial if it would "convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* And it "is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made." *Id.* (cleaned up). We view the evidence in the light most favorable to the State, drawing all "legitimate inferences and presumptions" from the evidence. *Id.* (cleaned up). As an appellate court, we do not "resolve conflicts in the evidence," "pass upon the credibility of witnesses," or "weigh the evidence"—"such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (cleaned up).

A jury found Meisheid guilty of two counts of assault on a peace officer while displaying a dangerous weapon in violation of Iowa Code sections 708.1(2)(c) and 708.3A(2). Section 708.3A(2) provides that "[a] person who commits an assault, as defined in section 708.1, against a peace officer . . . who knows that the person against whom the assault is committed is a peace officer . . . and who . . . displays a dangerous weapon in connection with the assault, is guilty of a class 'D' felony." Iowa Code § 708.3A(2). And as relevant here, "[a] person commits an assault" under section 708.1, "when, without justification, the person . . . [i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another." *Id.* § 708.1(2)(c).

Meisheid argues that the evidence was insufficient on two elements of the offense.  First, he contends that it fails to establish that he displayed the gun "in a threatening manner."  *Id.*  And second, he contends that the evidence does not show that he "display[ed]" the gun "toward another" because he pointed the gun in the air, not "toward" either deputy.[1]  *Id.*  We will take each argument in turn.

*Threatening Manner.*  In seeking to set a high bar for the State, Meisheid makes much of the fact that "[t]he statute does not define [what] it means to display a dangerous weapon in a threatening manner."  But the jury instructions here did define the phrase.  The jury was instructed, "'Displayed a dangerous weapon in a threatening manner' means to show or make apparent to another person that a dangerous weapon existed so as to intimidate the other person."  When jury instructions are not objected to, they "become the law of the case" for purposes of our review for sufficiency of the evidence claims.  *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020).  Nothing in the record shows that Meisheid objected to this (or any other) jury instruction.[2]  So we apply this definition in deciding whether there is sufficient evidence that Meisheid displayed the gun "in a threatening manner."  And we conclude that substantial evidence supports the jury's finding on this element.

The record, including the body camera footage of the entire encounter, shows how Meisheid displayed a gun to the deputies and how he reacted to the

---

[1] Meisheid has never disputed that he knew the deputies were peace officers.  At trial, he did contest whether the object he displayed was a dangerous weapon, testifying that the holster contained only his infrared meat thermometer.  But he does not challenge the sufficiency of the evidence of that element on appeal.

[2] Meisheid's appellate counsel did not represent him in the district court.

interaction with them. His demeanor starkly contrasts with the demeanor of the deputies. Meisheid is angry and using profanity. The deputies on the other hand are calm and try to explain multiple times why they are there. A rational trier of fact could view the body camera footage and conclude that Meisheid was attempting to intimidate the deputies, especially by pulling out the gun and stating, "I'll shoot a firework, boom, boom, boom, boom." And after he brandished the gun he said, "Well you assholes want to fucking always come on my property." The deputies backed off as Meisheid continued to yell at them. And both deputies testified that they felt "threatened" and "intimidated" by Meisheid. Bottom line, we have no trouble concluding that substantial evidence in the record supports the jury's finding that Meisheid showed the deputies "that a dangerous weapon existed so as to intimidate" them and thus "displayed a dangerous weapon in a threatening manner."

*Displayed Toward.* For his second challenge, Meisheid focuses on the definition of "toward"—which is not defined further in the statute or the jury instructions. He argues that because a common dictionary definition of "toward" is "in the direction of," the evidence must show "that he displayed the dangerous weapon *in the direction of another* to sustain" his conviction.[3] So he contends that because he pointed the holstered gun up at the sky, "he never displayed it *toward* them." And if "toward" were the only word we had to work with in interpreting the statute, his argument might have greater force.

---

[3] *See, e.g.*, *Toward*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997) (listing one definition as "in the direction of," as in "driving ~ town" and another as "in such a position as to be in the direction of," as in "your back was ~ me").

But we must consider the entire statute including the verb describing the criminalized conduct: "display." Iowa Code § 708.1(2)(c); *see MidAmerican Constr. LLC v. Sandlin*, 2 N.W.3d 838, 849 (Iowa 2024) ("When determining the meaning of a statute, a core canon of statutory interpretation requires us to construe the statute as a whole."). Displaying is what the statute requires to be done "toward another." Iowa Code § 708.1(2)(c). Accepting Meisheid's proffered definition of toward, the evidence must show that he *displayed* the gun in the direction of the deputies. Display means "to put or spread before the view*." Display*, *Merriam-Webster's Collegiate Dictionary* (10th ed. 1997). Thus, the statute requires evidence only that Meisheid put the gun in view in the direction of the deputies—not that he pointed the gun in their direction as Meisheid suggests.

We know that conflating "display toward" and "point toward" is inappropriate here because this same statutory provision separately criminalizes pointing a gun toward another. *See* Iowa Code § 708.1(2)(c) (including a person who "[i]ntentionally points any firearm toward another, or displays in a threatening manner any dangerous weapon toward another"). Interpreting "display toward" the same as "point toward" would render a portion of the statute surplusage, which we must avoid if we can. *See Sandlin*, 2 N.W.3d at 850 ("Canons of statutory interpretation require that every word and every provision in a statute is to be given effect, if possible, and *not* deemed mere surplusage." (cleaned up)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 176 (2012) ("If a provision is susceptible of (1) a meaning that gives it an effect already achieved by another provision, or that deprives another provision of all independent effect,

and (2) another meaning that leaves both provisions with some independent operation, the latter should be preferred.").

"Toward" might be a somewhat peculiar word to use in this context—it seems one might more naturally say one displays an object "*to* another."  But it is the word chosen for the statute.  And if anything, "toward" is a slightly broader term than "to"—merely requiring the display to be "in direction of" the other person rather than directly to them.

In this interpretation, "toward another" still does work in limiting the display conduct that would be criminalized.  For example, if Meisheid had pulled out the gun with his back to the deputies and in a manner that they could not see it, he would have not been displaying it "toward" the deputies.  So too if he had been standing alone in his house when he pointed it up in the air—he would not have been displaying it "toward another."

But on the facts here, we have little difficulty concluding substantial evidence supports the jury's finding that Meisheid displayed his holstered gun toward the deputies.  Indeed, Meisheid admits to us that he displayed the gun "*in front of*, *near*, and *next to* the deputies."  And the body camera footage backs that up.  While facing toward the deputies and in their full view, Meisheid removed the gun from his waistband in a manner that they could see it and pointed it into the air.  This is enough for a rational trier of fact to conclude that he displayed the gun toward the deputies.  *See State v. Downs*, No. 15-0900, 2016 WL 6652343, at *3 (Iowa Ct. App. Nov. 9, 2016) (holding that there was sufficient evidence that defendant displayed a weapon "toward" the victim when he "began shooting the gun near the house while [the victim] was standing just outside the front door," and

that the statute did not require the "weapon to be pointed directly at the victim"). We thus affirm Meisheid's convictions.

### III. Consideration of Mitigating Circumstances at Sentencing

Meisheid argues that the district court abused its discretion by concluding that no mitigating circumstances existed to reduce his mandatory minimum sentences under Iowa Code section 902.7. *See* Iowa Code § 901.10(1) (giving a court discretion to sentence a first-time offender under section 902.7 "to a term less than provided by the statute if mitigating circumstances exist and those circumstances are stated specifically in the record"). He argues that the record establishes several mitigating circumstances, including his lack of criminal history, history of public service, and poor health. And so, he contends the court's statement at sentencing that it did not "believe there are mitigating circumstances in this instance," rather than saying something like the "circumstances do not warrant a sentencing reduction," shows the court abused its discretion.

We review a district court's discretionary sentencing decisions, including the exercise of its discretion whether to reduce a mandatory minimum sentence under section 901.10, for an abuse of discretion. *See State v. Moore*, 936 N.W.2d 436, 439 (Iowa 2019); *State v. Thomas*, 547 N.W.2d 223, 225–26 (Iowa 1996). The sentencing decisions of district courts "are cloaked with a strong presumption in their favor." *State v. Pappas*, 337 N.W.2d 490, 494 (Iowa 1983) (cleaned up). Our role is limited to deciding whether a discretionary decision is "clearly untenable or to an extent clearly unreasonable." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). And a sentence is "untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (cleaned up).

The district court did not abuse its discretion here. The court understood that it had discretion to reduce the mandatory minimum sentence—stating at sentencing that it was "aware that 901.10 allows for the Court to sentence a first-time offender to less than the minimum if the Court finds mitigating circumstances." And contrary to what Meisheid implies from an isolated statement, the court expressly considered many of the circumstances that he contends should mitigate the mandatory minimum and recognized those were potential mitigating factors rather than aggravating ones. After discussing those factors—including Meisheid's lack of criminal history, his injuries, and evidence of his good character—the court weighed them against the seriousness of the offense and Meisheid's lack of accountability, reasoning:

> The Court does not see you taking accountability for this. The Court does not see any remorse for this. The Court does not see you recognizing the seriousness of this crime. The officers that you blame, the officers that you blamed that night, that you blamed during the trial, and that you blamed inadvertently today, were it not for their incredible restraint and their proper actions that night, there could have been a tragedy. Pulling a firearm on law enforcement is a serious offense. That is why it carries the penalties it carries.

And so the court explained that it "does not believe there are mitigating circumstances in this instance," reiterated that it "finds no mitigating circumstances exist" under the statute, and thus declined to exercise its discretion to reduce the mandatory minimum. In its written judgment entry, the court summarized again that it "does not find any mitigating circumstances to justify deviating from Iowa Code Section 902.7."

Nothing in the court's thoughtful reasoning shows that it improperly weighed Meisheid's circumstances or considered an improper factor in the sentencing. *Cf.*

*State v. Lovell*, 857 N.W.2d 241, 243 (Iowa 2014) ("If a court in determining a sentence uses any improper consideration, resentencing of the defendant is required." (cleaned up)).  In this broader context, the court's oral statement that "no mitigating circumstances exist" merely shows that the court concluded "in this instance" the circumstances did not mitigate the minimum sentence.  *Cf. Thomas*, 547 N.W.2d at 225–26 (holding that the full context of the court's reasoning showed it was aware of its discretion to deviate from the mandatory minimum, even when it summarized its conclusion not to deviate by saying "that the mandatory minimum must and does apply").  Indeed, the court tracked that more precise explanation in the written sentencing judgment.  And the court's conclusion is not untenable or unreasonable.  We thus affirm the district court's decision not to reduce the mandatory minimum sentence.

**AFFIRMED**.