# IN THE COURT OF APPEALS OF IOWA

No. 23-1215
Filed January 23, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**OTIS SEAY JR.,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

An offender appeals his prison sentence for violating requirements of the sex offender registry. **AFFIRMED.**

John C. Heinicke of Kragnes & Associates, P.C., Des Moines, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

Otis Seay Jr. claims that the district court abused its discretion in sentencing him to an indeterminate five-year prison term for violating the sex offender registry for the fourth time. Because the district court reached a reasonable result after weighing the appropriate factors, we affirm.

## I. Facts and Prior Proceedings

Seay was convicted of three counts of sexual abuse in the third degree in 2012; his victims were teenaged runaways. Those convictions required him to register as a sex offender beginning in 2017. In 2018, 2019, and 2020, he was convicted of registry violations.[1]

Relevant to this appeal, in September 2022, Seay created a Facebook account under the name of Al Stump Jr. But Seay did not update his sex offender registration with information about that account within five business days as required by Iowa Code chapter 692A (2022).[2] So the State charged Seay with failure to comply with the sex offender registry as a second or subsequent offense, in violation of Iowa Code sections 692A.104, 692A.105, and 692A.111.

Seay entered an *Alford* plea.[3] In return, the State agreed not to pursue a sentencing enhancement based on Seay's status as a habitual offender. After accepting his plea, the court ordered a presentence investigation (PSI) report.

---

[1] Two of those violations were for failing to update the registry with his new residences; one was for escape from a residential facility.

[2] Seay's omission surfaced when he was handing out business cards to staff at the Waterloo Residential Correctional Facility that listed that Facebook profile.

[3] *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("[A]n express admission of guilt . . . is not a constitutional requisite to the imposition of [a] criminal penalty.").

That report recommended incarceration, noting Seay's unwillingness to comply with rules at the residential facility where he lived at the time of this offense.[4]

At sentencing, the State recommended a term of up to five years in prison. The prosecutor expressed concern about Seay's "lengthy criminal history" starting in 1993. The prosecutor also detailed Seay's failure to respond to services in the community, reasoning: "At this point to continue to offer him additional services is kind of banging our head against a wall."

By contrast, defense counsel asked the court to allow his client to go to a residential correctional facility rather than prison. Counsel stressed the innocuous nature of the Facebook violation: "My understanding is that Mr. Seay was doing a greeting card business that he was making some money on the side. I don't think there's any evidence that he had any sinister intentions or he was doing that for nefarious purposes." Seay echoed that sentiment in his allocution: "All I was doing was making a little money because I'm disabled. I have no other ways of getting no money but to do my art." He mused: "Why would I pass the [business] cards to the staff knowing that I was doing something wrong? I'm fifty-one years old. I know better than that." Beyond that explanation, Seay discussed his personal traumas and the struggles facing his children. He also noted that he "started college when [he] was in the facility."

Before imposing sentence, the district court listed its considerations, including the parties' recommendations, the nature of the offense, Seay's allocution, his age, his prior record, and his family circumstances. *See* Iowa Code

---

[4] The PSI also reported that Seay scored in the low category for future violence and for future victimization on the Iowa Risk Revised assessment tool.

§ 907.5(1). As its bottom line, the court decided that Seay's rehabilitation and the community's protection would be best accomplished through incarceration. *See id.* § 901.5. Seay appeals.[5]

## II. Scope and Standard of Review

We review sentencing decisions for the correction of legal error. *State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024). If a sentence falls within statutory limits, we will not overturn it unless the district court abused its discretion or considered inappropriate matters. *Id.* We will find an abuse of discretion only if the court's reasoning was clearly untenable or unreasonable. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). Iowa courts enjoy broad discretion to rely on information presented at sentencing. *State v. Headley*, 926 N.W.2d 545, 550 (Iowa 2019).

## III. Discussion

Seay concedes that his prison sentence fell within statutory limits. And he acknowledges the "damning" nature of the PSI report. But he maintains that under Iowa's risk assessment tool, he "could" be placed in "community based supervision." Because the court had another option, Seay argues that the court abused its discretion in choosing a prison sentence.

But "our task on appeal is not to second guess the decision made by the district court." *Formaro*, 638 N.W.2d at 725. Instead, we only decide whether the sentence was unreasonable or based on untenable grounds.

---

[5] Seay's sentencing challenge satisfies the good-cause requirement for the right to appeal in Iowa Code section 814.6(1)(a)(3). *See State v. Damme*, 944 N.W.2d 98, 104–05 (Iowa 2020).

We find nothing irrational in the district court's exercise of its broad sentencing discretion. Given Seay's long history of offending and lack of success on probation, it made sense for the court to gravitate to the State's prison recommendation. As the prosecutor stressed, Seay "ran out of options with respects to community-based services." We give sentencing courts wide latitude in deciding among viable options. *See State v. Pappas*, 337 N.W.2d 490, 493 (Iowa 1983) (noting that trial courts hold "an awesome and lonely responsibility in sentencing"). On this record, we decline to remand for resentencing.

**AFFIRMED.**